Marc A. Karish (State Bar No. 205440)
marc.karish@kb-ip.com
Bruce G. Chapman (SBN 164258)
bruce.g.chapman@kb-ip.com
KARISH & BJORGUM, PC
119 E. Union Street, Suite B
Pasadena, CA 91103
Telephone: (213) 785-8070
Facsimile: (213) 995-5010

Attorneys for Defendant
and Counterclaim Plaintiff
YA YA CREATIONS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPULENT TREASURES, INC.<br><br>Plaintiff,<br><br>v.<br><br>YA YA CREATIONS, INC., BALSA CIRCLE, LLC, LEILANI WHOLESALE, CHAIR COVER FACTORY, INC., AND CHICAGO CHAIR COVERS, INC.<br><br>Defendants. | Case No. 2:22-cv-02616-SSS-JC<br>**REDACTED**<br>**DEFENDANT YA YA CREATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| YA YA CREATIONS, INC.<br><br>Counterclaimant,<br><br>v.<br><br>OPULENT TREASURES, INC.<br><br>Counterdefendant. | Date: April 21, 2023<br>Time: 2:00 pm<br>Courtroom: 2<br><br>Pretrial Conference: June 20, 2023<br>Trial Date: July 10, 2023 |

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................1

II.  FACTUAL BACKGROUND............................................................................2

III. LEGAL STANDARD ...................................................................................5

    A.   SUMMARY JUDGMENT.....................................................................5

    B.   PRODUCT SHAPE TRADE DRESS.......................................................5

IV. ARGUMENT...............................................................................................7

    A.   PLAINTIFF CANNOT PROVE VALID TRADEMARK RIGHTS IN
ITS PRODUCT SHAPES...................................................................7

        1.   The Undisputed Evidence Establishes That Actual Purchasers Of
the Product Do Not Associate The Shape With Plaintiff....................8

        2.   The Undisputed Advertising Is Insufficient To Generate
Secondary Meaning...............................................................9

        3.   Plaintiff Cannot Show Length and Manner of Use Sufficient To
Show Secondary Meaning.......................................................11

        4.   On the Undisputed Facts, Plaintiff's Use Has Not Been Exclusive .
..................................................................................14

        5.   Defendant's Intent Was to Make a Similar Product and Not to
Trade Off of Opulent Treasures' Alleged Goodwill..........................14

        6.   Without Any Survey Evidence, Plaintiff's Lack of Advertising
and Very Limited Sales Are Not Enough to Show Trademark Rights
As A Matter of Law................................................................15

    B.   PLAINTIFF'S ANCILLARY CLAIMS ALSO FAIL ON THE
UNDISPUTED FACTS......................................................................16

        1.   The Texas Common Law Trade Dress Claim Fails For The Same
Reason As Plaintiff's Federal Trademark Claims..............................16

2.   Plaintiff's Claims for Trade Dress Dilution Under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) and Trade Dress Dilution Under Tex. Bus. & Com. Code § 16.103 Both Fail Because The Alleged Trademarks Are Not Famous ............................................................16

3.   Plaintiff's Texas State Claims For Common Law Unfair Competition, Unjust Enrichment, and Common Law Misappropriation Fail Because Plaintiff Has No Trademark Rights ...............................18

V.   CONCLUSION ...................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ...................................................................5

*Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 870 (8th Cir. 1994) ....................7

*Balboa Ins. Co. v. Trans Global Equities*, 218 Cal.App.3d 1327, 1340, 267 Cal.Rptr. 787 (1990) ................................................................19

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 165, 109 S. Ct. 971, 985 (1989) .......................................................... 18, 19

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .......................................................................5

*Chrysler Corp. v. Vanzant*, 44 F. Supp. 2d 1082, 1083 (C.D. Cal. 1999) .........................................................................................15

*Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 719, 725-26 (Tex. App. 2015) ..........................................................................................20

*Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 237, 84 S. Ct. 779, 782 (1964) *citing Sears, supra*, 376 U.S. at 231, 84 S. Ct. at 784 ...............................................................................................18

*Continental La. Prods., Inc. v. Medax Int'l. Inc.*, 114 F. Supp. 2d 992, 1010 (S.D. Cal. 2000) .................................................................9, 15

*Converse, Inc. v. ITC*, 909 F.3d 1110, 1117-18 (Fed. Cir. 2018)............................7

*Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1453, 32 USPQ2d 1724, 1742 (3d Cir. 1994) ...........................................1

*E & J Gallo v. Proximo Spirits, Inc.*, 103 U.S.P.Q.2d 1656, 2012 WL 273077 (E.D. Cal. 2012)......................................................................6

*Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007) (per curiam).................................................................20

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 966-67 (9th
Cir. 2011) ..................................................................................................8

*Gemveto Jewelry Co. v. Jeff Cooper, Inc.,* 800 F.2d 256, 259 (Fed.
Cir. 1986) ................................................................................................19

*Global Manufacture Group v. Gadget Universe.com*, 417 F. Supp. 2d
1161 (S.D. Cal. 2006) ............................................................................15

*In re Boston Beer Co. L.P.*, 198 F.3d 1370 (Fed. Cir. 1999)........................... 10, 11

*In re Chevron Intell. Prop. Grp. LLC*, 96 USPQ2d 2026, 2031 (TTAB
2010) .......................................................................................................11

*In re Gibson Guitar Corp.*, 61 U.S.P.Q.2d 1948, 2001 WL 1631369
(TTAB 2001) .............................................................................................6

*In re ic! berlin brillen GmbH*, 85 USPQ2d 2021, 2023 (TTAB 2008) ............ 11, 12

*In re Kwik Lok Corp.*, 217 USPQ 1245, 1247-48 (TTAB 1983) ............................10

*In re La. Fish Fry Prods., Ltd.*, 797 F.3d 1332, 1337 (Fed. Cir. 2015)............ 10, 12

*In re MK Diamond Prods., Inc.*, 2020 TTAB LEXIS 263, *56; 2020
USPQ2d 10882, at *19 (TTAB 2020) .....................................................1

*In re OEP Enters., Inc.*, 2019 USPQ2d 309323, at *25 (TTAB 2019)...................10

*In re Orbit Irrigation Prods.* , 2017 TTAB LEXIS 55, *24
(TTAB  January 31, 2017)......................................................................14

*In re R.M. Smith, Inc.*, 734 F.2d 1482, 1484-1485 (Fed. Cir. 1984) ........................6

*In re Redken Labs., Inc.*, 170 USPQ at 528-29 (TTAB 1971) ....................... 11, 12

*Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982) ....................6

*Leatherman Tool Group, Inc. v. Cooper Industries, Inc.,* 131 F.3d
1011, 1014 (Fed. Cir. 1997)....................................................................18

*Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1358 (9th Cir.
1985) ..........................................................................................................6

*Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 1403 (Fed. Cir.
1984) ........................................................................................................14

*M-5 Steel Mfg. v. O'Hagin's Inc.* , 2001 TTAB LEXIS 697, *35, 61
U.S.P.Q.2D (BNA) 1086, 1098 (TTAB 2001)......................................................14

*Mag Instrument Inc. v. Brinkmann Corp.*, 96 USPQ2d 1701, 1723
(TTAB 2010) ..........................................................................................................11

*Network Automation, Inc. v. Hewlett-Packard Co.*, No. CV 08-4675-
JFW (RZx), 2009 U.S. Dist. LEXIS 125835, at *19 (C.D. Cal. Sep.
14, 2009) ................................................................................................................8

*Quoc Viet Foods, Inc. v. VV Foods, LLC*, 192 F. Supp. 3d 1067, 1073
(C.D. Cal. 2016).....................................................................................................7

*Real Foods Pty Ltd. v. Frito-Lay North Am., Inc.*, 906 F.3d 965, 978-
979 (Fed. Cir. 2018)..............................................................................................8

*Roselux Chemical Co. v. Parsons Ammonia Co.*, 299 F.2d 855, 862-
863 (C.C.P.A. 1962) ..............................................................................................8

*Rubber Stamp Mgmt., Inc. v. Kalmbach Publ'g Co.*, No. C06-
0277RSM, 2007 WL 1367718, at *4-5 (W.D. Wash. May 4, 2007) ................15

*Spin Master, LTD. v. Zobmondo Entm't, LLC*, 778 F. Supp. 2d 1052,
1059-60 (C.D. Cal. 2011) .....................................................................................5

*Steven W. Boney, Inc. v. Boney Servs.*, 127 F.3d 821 (9th Cir. 1997).....................15

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.,* 7 F.3d 1434,
1439–40 (9th Cir. 1993)......................................................................................19

*Switchmusic.com v. U.S. Music Corp.*, 2006 U.S. Dist. LEXIS 25178
(C.D. Cal. Jan. 24, 2006) ....................................................................................15

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29
(2001) .....................................................................................................................5

*United States Sporting Prods. v. Johnny Stewart Game Calls*, 865
S.W.2d 214, 218 (Tex. App. 1993)....................................................................20

*Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1099 (9th Cir. 1992)................................19

*Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 213-16, 54

    USPQ2d 1065, 1069-70 (2000) ................................................................1, 5

*YKK Corp. v. Jungwoo Zipper Co.*, 213 F. Supp. 2d 1195, 1198 (C.D.

    Cal. 2002)...........................................................................................................16

*Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex.

    App.—Houston [14th Dist.] 1992 ....................................................................16

*Zippo Mfg. Co. v. Rogers Imports, Inc.*, 216 F. Supp. 670, 689-690

    (S.D.N.Y. 1963) ..................................................................................................8

**Other Authorities**

15 U.S.C. § 1125(c) ................................................................................................16

15 U.S.C. §1057(b) ...................................................................................................8

15 U.S.C. §1094 ........................................................................................................8

15 U.S.C. §1127 ......................................................................................................13

Art. I, § 8, cl. 8, of the Constitution ......................................................................18

Fed. R. Civ. P. 56(c) .................................................................................................5

Lanham Act §2(f) ......................................................................................................6

Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West Supp. 2014).....................20

Tex. Bus. & Com. Code § 16.103........................................................................17

## I.      INTRODUCTION

Opulent Treasures, Inc. ("Opulent Treasures") brought this case alleging that seven of Ya Ya Creations, Inc.'s ("Ya Ya Creations'") products infringe at least eight different product shape trade dresses. Only one of those alleged trade dresses is registered by the U.S. Patent and Trademark Office on the principal register -- U.S. Trademark Reg. No. 5,912,235. And, to get that registration, Opulent made multiple misrepresentations.[1]

Product shape trade dress is very different than other types of trademarks. Product shape trade dress is never inherently distinctive because consumers recognize that product shapes are almost always intended not to identify the source, but to render the product itself more appealing. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 213-16, 54 USPQ2d 1065, 1069-70 (2000). Consequently, trademark applicants face a heavy burden in proving that the public associates the product shape with the applicant (that the product shape has "acquired distinctiveness"). *See In re MK Diamond Prods., Inc.*, 2020 TTAB LEXIS 263, *56; 2020 USPQ2d 10882, at *19 (TTAB 2020); *see also Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1453, 32 USPQ2d 1724, 1742 (3d Cir. 1994).

Key undisputed facts showing that, as a matter of law, Opulent Treasures trade dress is not distinctive in a trademark sense, include:

- an unrebutted survey establishing that consumers do not associate the design of Opulent Treasures' principally-registered trade dress with a particular source for the product;
- a lack of any evidence that Opulent Treasures engaged in paid advertising of any particular trade dress;

---

[1] Although the intent behind these misrepresentations is not at issue in this motion, the misrepresentations are the bases for Ya Ya Creations' fraud counterclaim against Opulent Treasures.

- the undisputed length and manner of use of the alleged trade dress, which is insufficient under governing law; and
- undisputed evidence shows that Opulent Treasures' use of the alleged trade dress has not been exclusive.

This undisputed evidence establishes that none of Opulent's alleged product shape trade dresses have acquired distinctiveness, or secondary meaning, necessary to support Opulent Treasure's claims.

## II.    FACTUAL BACKGROUND

Plaintiff alleges infringement of the following trade dresses. (D.N. 42 (Second Amended Complaint)).

| | |
|---|---|
|  |  |
| Plaintiff's Product No. OT1172[2] U.S. Trademark Reg. No. 5,912,235 (Principal Register) | Plaintiff's Product No. OT1739 No Registration (SUF, ¶5.) |

---

[2] Plaintiff's product numbers are identified in Dkt. No. 27-4.





Plaintiff's Product No. OT1769

No Registration (SUF, ¶5.)

Plaintiff's Product No. OT898

No Registration (SUF, ¶5.)





Plaintiff's Product No. OT899

No Registration (SUF, ¶5.)

Plaintiff's Product No. OT1703

No Registration (SUF, ¶5.)



Plaintiff's Product No. OT899

No Registration (SUF, ¶5.)



Plaintiff's Product No. OT836

U.S. Trademark Reg. No. 4,729,340

(Supplemental Register) (SUF, ¶6.)

Plaintiff has no survey evidence showing secondary meaning for any of the alleged trade dresses. (SUF, ¶ 1.) Plaintiff has no advertising data prior to 2014. (SUF, ¶ 2.) Plaintiff has no advertising data for any specific product bearing any of its alleged trade dresses. (SUF, ¶ 3.) Plaintiff has only spent a total of $▮▮▮▮ on advertising all of its products combined from 2014 through 2021. (SUF, ¶ 4.) There is no evidence of any actual confusion between any of Plaintiff's products and any of Ya Ya Creations' products. (SUF ¶ 7.)

Moreover, prior to this lawsuit, Plaintiff never marked any of its products with any indication that the shape of the product was alleged to be a trademark. (SUF ¶ 8.) Prior to this lawsuit, Plaintiff never marked any of its product packaging or labels with any indication that the shape of the product was alleged to be a trademark. (SUF ¶ 9.) Prior to this lawsuit, none of the product pages for Plaintiff's products indicated that the shape of the product was alleged to be a trademark. (SUF ¶ 10.)

Finally, multiple third parties, including Lamps Plus have been selling similar products since at least 2014. (SUF ¶ 11.) Lamps Plus continued selling its similar products all the way up through 2022. (SUF ¶ 12.)

## III.    LEGAL STANDARD

### A. SUMMARY JUDGMENT

Summary judgment shall be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing on the essential elements of its claims on which it bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). An issue of fact is genuine if it reasonably can be resolved in favor of either party. *Anderson*, 477 U.S. at 250-51. The nonmovant's evidence is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor. *Id.* at 255; *Spin Master, LTD. v. Zobmondo Entm't, LLC*, 778 F. Supp. 2d 1052, 1059-60 (C.D. Cal. 2011).

### B. PRODUCT SHAPE TRADE DRESS

"Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001). "[T]here exists a fundamental right to compete through imitation of a competitor's product, which right can only be temporarily denied by the patent or copyright laws." *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 785 (9th Cir. 2002). The Supreme Court has made clear that product configuration rarely has trademark significance. *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 213 (2000) ("Consumers are aware of the reality that almost invariably, even the most unusual of product designs – such as a

cocktail shaker shaped like a penguin – is intended not to identify the source, but to render the product itself more useful or more appealing”).

To obtain trade dress protection, a product configuration must be shown to have secondary meaning. Secondary meaning is established when the purchasing public associates the mark with one particular producer or source, rather than just the product itself. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982). Factors to be considered in determining secondary meaning include: (1) whether actual purchasers of the product associate the mark with the producer; (2) the degree and manner of advertising under the mark; (3) the length and manner of use of the mark; and (4) whether Plaintiff’s use has been exclusive. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985).

An applicant faces a “heavy burden in establishing” that the design of a product has secondary meaning (sometimes called acquired distinctiveness) under Lanham Act §2(f). *E & J Gallo v. Proximo Spirits, Inc.*, 103 U.S.P.Q.2d 1656, 2012 WL 273077 (E.D. Cal. 2012) (A trapezoidal shaped Tequila bottle is an “ordinary geometric shape” which is not inherently distinctive under the *Seabrook* test and lacked secondary meaning); *In re Gibson Guitar Corp.*, 61 U.S.P.Q.2d 1948, 2001 WL 1631369 (TTAB 2001) (because applicant's guitar body shape was so similar to hundreds of other guitar shapes, applicant had a “heavy burden” to prove secondary meaning).

For product shape marks, length of use alone is not sufficient by itself to show secondary meaning, without actual evidence that the mark is perceived as a mark for the relevant goods/services/classes would be required to establish distinctiveness. *See e.g. In re R.M. Smith, Inc.*, 734 F.2d 1482, 1484-1485 (Fed. Cir. 1984) (Eight years of continuous and exclusive use for configuration of pistol grip water nozzle not sufficient to show acquired distinctiveness and pistol grip held functional); *In re Gibson Guitar Corp.*, 61 USPQ2d 1948, 1952 (TTAB 2001) (66 years of use not sufficient given similarity of configuration to other guitars).

## IV.    ARGUMENT

### A. PLAINTIFF CANNOT PROVE VALID TRADEMARK RIGHTS IN ITS PRODUCT SHAPES

Opulent Treasures has a single trade dress registered on the USPTO's principal register. Although such a registered trade dress is generally entitled to a presumption of secondary meaning, that presumption *does not apply* when the accused products were on sale prior to the registration. *Quoc Viet Foods, Inc. v. VV Foods, LLC*, 192 F. Supp. 3d 1067, 1073 (C.D. Cal. 2016)("a senior user must prove the existence of secondary meaning in its designation at the time and place that the junior user began its use of that designation . . .If the senior user cannot prove that its mark possessed secondary meaning at the time defendant commenced its use, there can be no infringement." (internal citations omitted)); *Converse, Inc. v. ITC*, 909 F.3d 1110, 1117-18 (Fed. Cir. 2018)("with respect to infringement by those respondents whose first uses came before the registration (including all of the intervenors), Converse must establish without the benefit of the presumption that its mark had acquired secondary meaning before the first infringing use by each respondent"); *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 870 (8th Cir. 1994).

The products that are accused of infringing the trade dress registered on the principal register were on sale well prior to the registration: Ya Ya Creations' CHDLR_045 products were on sale in 2017 and Plaintiff's Trademark Reg. No. 5,912,235 registered on November 19, 2019. (SUF, ¶ 13.)  So even as to the principally registered trade dress, Plaintiff must prove that the alleged trade dress had acquired secondary meaning prior to the time the alleged infringement began, which it cannot do.

For the remainder of the alleged trade dresses, whether registered on the USPTO's secondary register or unregistered, the burden is on Opulent Treasures to prove that each and every separate trade dress has secondary meaning. *Fleischer*

---

*Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 966-67 (9th Cir. 2011)(without a
federal registration the claimant loses out on the presumption of validity that a
registration confers and must show that the mark has acquired secondary meaning);
*Network Automation, Inc. v. Hewlett-Packard Co.*, No. CV 08-4675-JFW (RZx),
2009 U.S. Dist. LEXIS 125835, at *19 (C.D. Cal. Sep. 14, 2009); 15 U.S.C. §1094
(supplemental registrations not entitled to receive the advantage of 15 U.S.C.
§1057(b)).

Accordingly, for all of Opulent Treasures' alleged trade dress – whether
registered or not – Opulent Treasures has the burden to prove secondary meaning.
On the undisputed facts, Opulent Treasures cannot meet that burden.

1. <u>The Undisputed Evidence Establishes That Actual Purchasers
Of the Product Do Not Associate The Shape With Plaintiff</u>

Ya Ya Creations conducted a secondary meaning survey that concluded
Plaintiff's primary trade dress (the only trade dress registered on the principal
register and the one with by far the most alleged sales) had not acquired secondary
meaning. *See* the Declaration of Sarah Parikh ("Parikh Dec."), attached as Exh. B
to the Declaration of Marc Karish ("Karish Dec.").  Specifically, the survey
showed that a net of only 7% of the respondents identified the overall look and
appearance of the alleged trade dress with a single source.  See Parikh Dec. ¶ 53.
In Dr. Parikh's expert opinion, that result fails to establish secondary meaning.  *Id.*
*See also Zippo Mfg. Co. v. Rogers Imports, Inc.*, 216 F. Supp. 670, 689-690
(S.D.N.Y. 1963) (25% of respondents associating plaintiff's designation with a
single source was insufficient proof of secondary meaning); *Roselux Chemical Co.
v. Parsons Ammonia Co.*, 299 F.2d 855, 862-863 (C.C.P.A. 1962) (survey showing
only 10% of the sample gave trademark significance to a descriptive term was held
insufficient proof of secondary meaning); *Real Foods Pty Ltd. v. Frito-Lay North
Am., Inc.*, 906 F.3d 965, 978-979 (Fed. Cir. 2018) (survey evidence of 10% of

respondents associating CORN THINS with a particular company supported the
TTAB's finding that the proposed marks had not acquired distinctiveness).

This survey evidence and opinion is undisputed.  Opulent Treasures did not
rebut Dr. Parikh's survey or opinion.  (SUF. ¶ 14.) Nor does Opulent Treasures
have any survey evidence showing that any of the alleged product shape trade
dresses have acquired secondary meaning. (SUF. ¶ 1.)

Accordingly, the undisputed evidence affirmatively establishes that actual
purchasers do not associate the Opulent Treasures trade dress registered on the
principal register with the Plaintiff.  And for the remaining alleged trade dress
configurations, as to which Opulent Treasures bears the burden of proof there is
simply no meaningful admissible evidence that any actual purchasers associate the
alleged trade dress configuration with Plaintiff.[3]

### 2.  The Undisputed Advertising Is Insufficient To Generate Secondary Meaning

Plaintiff cannot show any paid advertising prior to 2014. (SUF. ¶ 2.)
Moreover, after 2014, Plaintiff cannot show that it had any paid advertising for any
specific product, let alone that any of that advertising attempted to link the specific
product shape with Plaintiff.  (SUF. ¶ 3.)

---

[3] Opulent Treasures submitted boilerplate customer statements from 2019 in
connection with its trademark applications for trademark registration 5,912,235.
Those statements are unhelpful hearsay because Opulent Treasures must prove
secondary meaning as of 2017 when Ya Ya Creations' allegedly infringing
products were first sold and are entitled to *de minimus* evidentiary weight.
*Continental Lab. Prods. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992, 1005 (S.D. Cal.
2000)("The Ninth Circuit has held that affidavits of employees and close affiliates
of a trademark holder carry *de minimus* evidentiary weight in determining whether
a trademark has acquired secondary meaning, and cannot defeat a defendant's
motion for summary judgment").

From 2014 through 2021, Plaintiff spent a total of $████ on advertising for all of its products combined. (SUF. ¶ 4.)  That is less than $████ per year for all of its products combined.[4]  Such a limited amount of advertising was insufficient to associate in consumers' minds that any particular product configuration of Plaintiff was associated with it. *See, In re Boston Beer Co. L.P.*, 198 F.3d 1370, 53 USPQ2d 1056 (Fed. Cir. 1999) (finding acquired distinctiveness claim based on annual sales under the mark of approximately $85 million, and annual advertising expenditures in excess of $10 million – $2 Million of which were spent on promotions and promotional items which included the phrase THE BEST BEER IN AMERICA – insufficient to establish distinctiveness, in view of the highly descriptive nature of the proposed mark); *In re La. Fish Fry Prods., Ltd.*, 797 F.3d 1332, 1337 (Fed. Cir. 2015)(30 years of use and $2.4 Million in advertising over a two year period insufficient to establish acquired distinctiveness).

Additionally, none of Plaintiff's advertising points out that any of the product shapes are considered to be a trademark of the Plaintiff.  *See In re OEP Enters., Inc.*, 2019 USPQ2d 309323, at *25 (TTAB 2019) (holding evidence of acquired distinctiveness deficient in part because "[a]pplicant's consumer facing advertisements, do little more than show the products, and they do not establish that consumers associate the features of the applied-for trade dress mark with [a]pplicant"); *In re Kwik Lok Corp.*, 217 USPQ 1245, 1247-48 (TTAB 1983) (holding evidence insufficient to establish acquired distinctiveness notwithstanding applicant's statement that advertising involved several hundred thousands of dollars, where there was no evidence that the advertising had any impact on

---

[4] Not all of the advertising expense is relevant, because some of it occurred after the introduction of the products accused of infringement, and thus the date by which Opulent Treasures must prove secondary meaning.  Nevertheless, since the total advertising is insufficient to create secondary meaning, it is unnecessary to parse the advertising spend further by date.

purchasers in perceiving the configuration as a mark); *In re Chevron Intell. Prop. Grp. LLC*, 96 USPQ2d 2026, 2031 (TTAB 2010) (finding evidence of acquired distinctiveness deficient in part because of the lack of advertisements promoting recognition of pole spanner design as a service mark); *In re Redken Labs., Inc.*, 170 USPQ at 528-29 (TTAB 1971)(holding no acquired distinctiveness notwithstanding ten years of use, over $500,000 in promotion and sponsorship expenses, and the staging of over 300 shows per year where advertising and promotional material showed only descriptive usage of applied-for mark); *Mag Instrument Inc. v. Brinkmann Corp.*, 96 USPQ2d 1701, 1723 (TTAB 2010) (finding absence of "look for" advertisements damaging to attempt to demonstrate acquired distinctiveness of proposed configuration mark); *In re ic! berlin brillen GmbH*, 85 USPQ2d 2021, 2023 (TTAB 2008) (affirming refusal to register product configuration for spectacles and sunglasses, as the applicant failed to prove acquired distinctiveness chiefly because of the "absence of evidence of the advertising and/or promotion by the applicant of the earpiece design as a trademark").

Accordingly, Plaintiff's alleged advertising is insufficient to show that any of its product configurations have secondary meaning.

### 3. Plaintiff Cannot Show Length and Manner of Use Sufficient To Show Secondary Meaning

Given Plaintiff's failure to mark its products, packaging and webpages, a consumer views and purchases Plaintiff's products without seeing a link between the alleged product configuration and Plaintiff. Given this failure, the length and number of sales are insufficient to show that the products have acquired secondary meaning. See e.g. *In re Boston Beer Co. L.P.*, 198 F.3d 1370 (Fed. Cir. 1999)(annual sales of $85 Million insufficient to establish acquired distinctiveness); *In re La. Fish Fry Prods., Ltd.*, 797 F.3d 1332, 1337 (Fed. Cir. 2015)(30 years of use insufficient to establish acquired distinctiveness; *In re*

*Redken Labs., Inc.*, 170 USPQ at 528-29(TTAB 1971)(holding no acquired distinctiveness notwithstanding ten years of use); *In re ic! berlin brillen GmbH*, 85 USPQ2d 2021, 2023 (TTAB 2008) (affirming refusal to register product configuration for spectacles and sunglasses, as the applicant failed to prove acquired distinctiveness chiefly because of the "absence of evidence of the advertising and/or promotion by the applicant of the earpiece design as a trademark").

Below is a chart showing each of the asserted products along with information about total sales as well as when the products were first introduced and last sold.

| Opulent Product | Gross Sales | First Introduced | Last Sold |
|---|---|---|---|
| OT1172 | $█ | █ | █ |
| OT1739 | $█ | █ | █ |
| OT1769 | $█ | █ | █ |
| OT898 | $█ | █ | █ |
| OT899 | $█ | █ | █ |
| OT1703 | $█ | █ | █ |
| OT1540 | $█ | █ | █ |
| OT836 | $█ | █ | █ |

Under the case law, products sold in these numbers over these durations have not acquired secondary meaning in the eyes of the public. The OT1769 product sold for █ years, had only $█ in total sales, and has not been sold for over █ years.[5] Likewise, the OT1703 product was sold for █ years and had just

---

[5] Nonuse for 3 consecutive years is also prima facie evidence of trademark abandonment. 15 U.S.C. §1127.

$█████ in total sales (which amounts to a yearly average of less than $████ in sales).

The OT1540 product was sold for █ years and had only $█████ in total sales (which amounts to a yearly average of less than $████ in sales). Moreover, the OT1540 product has not been sold since ████ The OT899 product was allegedly first sold in ████ and had $█████ in total sales. According to sales records produced by Plaintiff, the OT899 product has not been sold since ████ This amounts to a yearly average of less than $████ in sales.

The OT898 product was allegedly first sold in ████ and had $█████ in total sales through ████ This amounts to a yearly average of less than $████ in sales. The OT1739 product was allegedly first sold in ████ with total sales of $█████ up through ████ This amounts to a yearly average of less than $█████ in sales. The OT836 product was allegedly first sold in ████ with total sales of $█████ through ████ This amounts to a yearly average of less than $132,000 in sales. Given the small amounts of annual sales, none of these products could have acquired secondary meaning.

Finally, the OT1172 product allegedly has $█████ in total sales from ████ through ████ This amounts to a yearly average of less than $█████ in sales. This product had the longest use, highest yearly average sales and highest total sales, and yet Dr. Parikh's survey showed that this product had not acquired secondary meaning in the minds of consumers.

Accordingly, without survey or advertising evidence, Plaintiff simply cannot show that the length and manner of use is sufficient to show secondary meaning in the minds of consumers for any of the alleged product configurations.

---

[6] Plaintiffs produced sales records do not support this amount and actual sales are believed to be less than $█████ For the sake of this motion, Ya Ya Creations submits that even considering Plaintiff's states sales of $█████ there is insufficient use to show secondary meaning.

### 4. On the Undisputed Facts, Plaintiff's Use Has Not Been Exclusive

It is undisputed that third parties have been selling similar products for many years. For example, Lamps Plus has been selling similar products since at least 2014. (SUF, ¶ 11.) Lamps Plus continued selling those products up through 2022, when Opulent filed a lawsuit against Lamps Plus. (SUF, ¶ 12.) The over 8 years of overlapping sales by Lamps Plus and others prevented Plaintiff's products from acquiring secondary meaning. *See e.g. Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 1403 (Fed. Cir. 1984)(lack of exclusive use was fatal to acquisition of secondary meaning); *M-5 Steel Mfg. v. O'Hagin's Inc.*, 2001 TTAB LEXIS 697, *35, 61 U.S.P.Q.2D (BNA) 1086, 1098 (TTAB 2001)("there are at least three companies including opposer that produce roof vents substantially similar to applicant's vents. This alone would make it difficult for applicant to establish acquired distinctiveness"); *In re Orbit Irrigation Prods.*, 2017 TTAB LEXIS 55, *24 (TTAB January 31, 2017)(20 years of use, sales of over 2.6 million products and $25 million annually, and annual advertising of approximately $3.5 million over several years not enough to show secondary meaning where others used similar colors).

### 5. Defendant's Intent Was to Make a Similar Product and Not to Trade Off of Opulent Treasures' Alleged Goodwill

Given Plaintiff's limited evidence in support of secondary meaning, Plaintiff may argue that Ya Ya Creations intentionally copied Plaintiff's trade dress and that this intentional copying is evidence of secondary meaning.  This argument is meritless.  Defendant intended to produce products that were similar to those being sold by a third party.  (Karish Dec., Exh. D (Ya Ya Creations Deposition Transcript), at 98:6-14.)  Defendant had never heard of Opulent Treasures and was unaware that Plaintiff was claiming any trademark rights until receiving a takedown notice from Red Points Solutions in September 2020. (Karish Dec., Exh.

D (Ya Ya Creations Deposition Transcript), at 40:4-41:11.)  However, even evidence of intentional copying alone is insufficient to defeat a motion for summary judgment that a trade dress is not distinctive. *Chrysler Corp. v. Vanzant*, 44 F. Supp. 2d 1082, 1083 (C.D. Cal. 1999); *Continental Lab Prods., Inc. v. Medax Int'l. Inc.*, 114 F. Supp. 2d 992, 1010 (S.D. Cal. 2000).

      6.  <u>Without Any Survey Evidence, Plaintiff's Lack of Advertising and Very Limited Sales Are Not Enough to Show Trademark Rights As A Matter of Law</u>

Ninth Circuit Courts have repeatedly rejected claims of secondary meaning with much more evidence than the present case.  See e.g. *Rubber Stamp Mgmt., Inc. v. Kalmbach Publ'g Co.*, No. C06-0277RSM, 2007 WL 1367718, at *4-5 (W.D. Wash. May 4, 2007)(summary judgment of no acquired distinctiveness despite evidence of television advertising, millions of email newsletters, hundreds of thousands of packages bearing a mark and millions of internet banner advertisements, because there was no evidence of the effectiveness of the effort to create the association between mark and product in the consumer's mind); *Continental Lab. Prods., Inc. v. Medax Intl., Inc. et al.*, 114 F. Supp. 2d 992 (S.D. Cal. 2000) (plaintiff's evidence of sales, advertising, exclusive use, employee affidavits and deliberate copying found "individually and collectively insufficient to raise a genuine issue of material fact on the issue of secondary meaning"); *Steven W. Boney, Inc. v. Boney Servs.*, 127 F.3d 821 (9th Cir. 1997); *Global Manufacture Group v. Gadget Universe.com*, 417 F. Supp. 2d 1161 (S.D. Cal. 2006); *Switchmusic.com v. U.S. Music Corp.*, 2006 U.S. Dist. LEXIS 25178 (C.D. Cal. Jan. 24, 2006).

Accordingly, Plaintiff's alleged trademarks have no secondary meaning and are invalid.[7]

## B. PLAINTIFF'S ANCILLARY CLAIMS ALSO FAIL ON THE UNDISPUTED FACTS

### 1. The Texas Common Law Trade Dress Claim[8] Fails For The Same Reason As Plaintiff's Federal Trademark Claims

Plaintiff's claim for Texas common law trade dress infringement is commensurate with its federal trademark claims. *Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex. App.—Houston [14th Dist.] 1992, no writ)(the elements of a common-law trademark infringement action under Texas law are the same as those of a federal trademark infringement action).[9] As explained above, none of Plaintiff's product configurations have acquired secondary meaning. Plaintiff therefore has no federal trademark rights. Given that Texas common law trade dress infringement is commensurate with federal trademark infringement law, Plaintiff's claim under Texas common law trade dress must fail.

### 2. Plaintiff's Claims for Trade Dress Dilution Under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) and Trade Dress Dilution Under Tex. Bus. & Com. Code § 16.103[10] Both Fail Because The Alleged Trademarks Are Not Famous

15 U.S.C. § 1125(c) states:

---

[7] This disposes of counts 1, 2 and 6 of the Second Amended Complaint (Dkt. No. 42).

[8] Count 3 of the Second Amended Complaint (Dkt. No. 42.)

[9] That same is true for California common law trade dress infringement. *See YKK Corp. v. Jungwoo Zipper Co.*, 213 F. Supp. 2d 1195, 1198 (C.D. Cal. 2002).

[10] Counts 4 and 5 of the Second Amended Complaint (Dkt. No. 42).

Subject to the principles of equity, the owner of a famous <u>mark</u> that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another <u>person</u> who, at any time after the owner's <u>mark</u> has become famous, commences <u>use</u> of a <u>mark</u> or <u>trade name</u> in <u>commerce</u> that is likely to cause dilution by blurring or dilution by tarnishment of the famous <u>mark,</u> regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury. . . a <u>mark</u> is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the <u>mark</u>'s owner.

Trade dress dilution under Tex. Bus. & Com. Code § 16.103 essentially restates the federal standard but requires that the mark be famous in Texas:

(a)  Subject to the principles of equity, the owner of a mark that is famous and distinctive, inherently or through acquired distinctiveness, in this state is entitled to enjoin another person's commercial use of a mark or trade name that begins after the mark has become famous if use of the mark or trade name is likely to cause the dilution of the famous mark.

(b)  For purposes of this section, a mark is considered to be famous if the mark is widely recognized by the public throughout this state or in a geographic area in this state as a designation of source of the goods or services of the mark's owner.

As explained above, none of Plaintiff's alleged trademarks have acquired secondary meaning. Plaintiff has no evidence that its trademarks are "famous". Plaintiff has no survey evidence that the public associates any of its asserted trademarks with it, let alone that any of the asserted trademarks are "widely recognized" by either "the general consuming public of the United States" or "the public throughout [Texas] or in a geographic area in [Texas]" "as a designation of

source of the goods or services of [Opulent]." Accordingly, summary judgment should be granted as to these causes of action.

> 3. Plaintiff's Texas State Claims For Common Law Unfair Competition, Unjust Enrichment, and Common Law Misappropriation[11] Fail Because Plaintiff Has No Trademark Rights

To the extent that Opulent alleges Ya Ya Creations copied its products, these allegations, even if true-- and they are not - - are not actionable under federal trademark law (as explained above) and patent law (because Opulent filed for no patents) and Opulent cannot look to state law to extend protection to its unpatented products. As explained by the Supreme Court in the seminal *Compco* case:

> [w]hen an article is unprotected by a patent ... state law may not forbid others to copy that article. To forbid copying would interfere with the federal policy, found in Art. I, § 8, cl. 8, of the Constitution and in the implementing federal statutes, of allowing free access to copy whatever the federal patent ... laws leave in the public domain.

*Compco Corp. v. Day-Brite Lighting, Inc.,* 376 U.S. 234, 237, 84 S. Ct. 779, 782 (1964) *citing Sears, supra,* 376 U.S. at 231, 84 S. Ct. at 784; *see also Leatherman Tool Group, Inc. v. Cooper Industries, Inc.,* 131 F.3d 1011, 1014 (Fed. Cir. 1997) (holding that "while the patent laws provide the right to exclude others from making, using or selling a claimed invention for a statutorily limited amount of time, if such rights could be but were not awarded under the patent laws, the states may not provide commensurate protection").

Consistent with the preemptive effect of federal patent law, courts routinely find that the copying of unpatented products that exist in the public domain are not actionable. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 165,

---

[11] Claims 7, 8 and 9 of the second amended complaint (Dkt. No. 42).

109 S. Ct. 971, 985 (1989); *Gemveto Jewelry Co. v. Jeff Cooper, Inc.,* 800 F.2d 256, 259 (Fed. Cir. 1986) ("copying of the article itself that is unprotected by the federal patent and copyright laws cannot be protected by state law").

 The Ninth Circuit has stated that where state law offers "patent-like protection for ideas deemed unprotected under the present federal scheme, [state law] conflicts with the strong federal policy favoring free competition in ideas." *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.,* 7 F.3d 1434, 1439 (9th Cir. 1993). Analyzing *Bonito Boats,* the Ninth Circuit, has held that the Patent Clause still leaves room for very limited state protection of intellectual property if the "extra element" test is met.  In *Summit Machine Tool Manufacturing v. Victor CNC Systems,* 7 F.3d 1434, 1439-1442 (9th Cir. 1993), the court interpreted *Bonito Boats* as allowing state protection against "reverse palming off" (marketing another's goods as one's own) of an unpatented article, but not against the actual copying of that article.  *See also Waits v. Frito-Lay, Inc.,* 978 F.2d 1093, 1099 (9th Cir. 1992) (finding *Bonito Boats* dicta affirmed that States were free to place limited restrictions on unpatented designs in order to prevent consumer confusion). The analysis turns on "determining whether the state law claim contains an element not shared by the federal law -- an element which changes the nature of the action 'so that it is *qualitatively* different from a copyright [or patent] infringement claim.'"  *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.,* 7 F.3d 1434, 1439–40 (9th Cir. 1993) (quoting *Balboa Ins. Co. v. Trans Global Equities,* 218 Cal.App.3d 1327, 1340, 267 Cal.Rptr. 787 (1990)). Plaintiff cannot prove any additional elements for any of its claims for common law unfair competition, unjust enrichment or misappropriation.

 Common law unfair competition in Texas "is a common law tort that occurs when one business entity 'palms off' its products as those of another. The determinative question is whether the tortfeasor's practices are likely to mislead customers into believing that the product emanates from or has been endorsed by

the claimant. . . . [T]he test is likelihood of confusion." *Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 725-26 (Tex. App. 2015)(internal citation omitted). As explained above, Plaintiff has no trademark rights with regard to any of its alleged product configurations. Thus, because none of the asserted product configurations are associated with the Plaintiff, any use of similar product configurations by Ya Ya Creations is unlikely to lead to any confusion that Ya Ya Creations' products emanate from or have been endorsed by the Plaintiff. Accordingly, Plaintiff's claim for common law unfair competition fails.

Because Plaintiff has no trademark rights in any of its asserted product configurations, any enrichment by others is not "unjust". Additionally, claims of unjust enrichment are governed by the two-year statute of limitations in section 16.003 of the Texas Civil Practice and Remedies Code. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007) (per curiam); *see* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West Supp. 2014); *Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 719 (Tex. App. 2015). Accordingly, Plaintiff's claims against Ya Ya Creations' products that have been on sale for more than 2 years prior to when the case was filed are barred.

Finally, to prevail on a claim of common law misappropriation, the plaintiff has the burden of establishing: (1) the creation of its product through extensive time, labor, skill and money, (2) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a "free ride") because the defendant is burdened with little or none of the expense incurred by the plaintiff, and (3) commercial damage to the plaintiff. *United States Sporting Prods. v. Johnny Stewart Game Calls*, 865 S.W.2d 214, 218 (Tex. App. 1993). There has to be some basis for arguing actual misappropriation. For example, that a defendant misused something of a plaintiff, such as by infringing the plaintiff's rights or by trade secret theft. Otherwise, a plaintiff without a patent could just argue that it was hard to make its product and no one should be able to

make a competing product forever, in clear violation of the U.S. patent laws. Here, the Plaintiff has not identified any protectible right that Ya Ya Creations has wrongfully misappropriated. Accordingly, Plaintiff's claim for common law misappropriation fails.

## V. CONCLUSION

For each and all of the reasons above, Ya Ya Creations requests that the Court grant Ya Ya Creations' motion for summary judgment against all of Opulent Treasures' claims in this litigation.

Respectfully submitted:

Dated: March 3, 2023                    KARISH & BJORGUM, PC


By:  */s/  Marc A. Karish*
Marc A. Karish

Attorneys for Defendant
and Counterclaim Plaintiff
YA YA CREATIONS, INC.

## CERTIFICATE OF SERVICE

A copy of Defendant Ya Ya Creations, Inc. Motion For Summary Judgment was served upon the parties to this matter via the Court's CM/ECF system and via email on March 3, 2023.

*/s/ Marc A. Karish*