John van Loben Sels (SBN 201354)
jvanlobensels@thoits.com
Melissa K. Zonne (SBN 301581)
mzonne@thoits.com
Brittany M. Nobles (SBN 343513)
bnobles@thoits.com
**THOITS LAW**
A Professional Corporation
400 Main Street, Suite 205
Los Altos, California 94022
Telephone:  (650) 327-4200
Facsimile:  (650) 325-5572

Attorneys for Plaintiff
OPULENT TREASURES, INC.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPULENT TREASURES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>YA YA CREATIONS, INC., BALSA CIRCLE, LLC, LEILANI WHOLESALE, CHAIR COVER FACTORY, INC., AND CHICAGO CHAIR COVERS, INC.,<br><br>Defendants. | Case No.:  2.22-cv-02616-SSS-JC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT YA YA CREATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        April 21, 2023<br>Time:       2:00 p.m.<br>Dept.: 2<br><br>Pretrial Conference: June 20, 2023<br>Trial Date: July 10, 2023 |
| YA YA CREATIONS, INC.<br><br>Counterclaimant,<br><br>v.<br><br>YA YA CREATIONS, INC., BALSA CIRCLE, LLC, LEILANI WHOLESALE, CHAIR COVER FACTORY, INC., AND CHICAGO CHAIR COVERS, INC.,<br><br>Counterdefendant. | |

THOITS LAW
A PROFESIONAL CORPORATION

1

2

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................. 1
II.   FACTUAL BACKGROUND ................................................. 2
III.  LEGAL STANDARD ON SUMMARY JUDGMENT ................. 4
IV.   ARGUMENT ................................................................... 5
      A.    The Summary Judgment Record Establishes Numerous
            Questions Of Material Fact As To Whether The Trade
            Dresses Have Acquired Secondary Meaning .................... 5
      B.    Opulent's Federal Registration Is *Prima Facie* Evidence Of
            Acquired Distinctiveness, And Thus Raises A Triable Issue
            As To That Product ................................................... 6
      C.    Direct Evidence Of Consumer Testimony Creates A
            Question Of Material Fact As To Whether The Unregistered
            Trade Dresses Have Acquired Secondary Meaning ............ 7
      D.    Circumstantial Evidence Of Exclusive Use, Advertising,
            Sales Data, Market Position, And Evidence Of Copying
            Are Evidence Of Secondary Meaning That Establish
            Triable Issues As To Each Opulent Product .................... 9
      E.    Summary Judgment Is Inappropriate Because Material
            Fact Issues Are Disputed By Experts ........................... 13
      F.    Defendant's Authorities Fail To Support Its Legal
            Conclusions .......................................................... 15
            1.    Defendant's Attack On Plaintiff's Infringement Claim
                  Under § 32(1) Of The Lanham Act Fails ................ 15
            2.    Defendant's Authorities Fail To Support Its Attack
                  On Plaintiff's Claims Under § 43(A) Of The Lanham
                  Act ....................................................... 16
                  (a)   Defendant Fails To Establish No Issue Of
                        Material Fact Exists As To Factor 1:
                        Direct Consumer Testimony Or Consumer
                        Perception ......................................... 18
                  (b)   Defendant Fails To Establish The Absence
                        Of Material Fact As To Factor 2: Exclusivity,
                        Manner, Length Of Use ........................... 18
                  (c)   Defendant Fails To Establish No Issue Of
                        Material Fact Exists As To Factor 3: Amount
                        and Manner of Advertising ....................... 20
                  (d)   Defendant Fails To Establish No Issue Of
                        Material Fact Exists As To Factor 4: Amount
                        Of Sales, Number Of Customers ................. 21
                  (e)   Defendant Fails To Establish No Issue Of
                        Material Fact Exists As To Factors 5 Or 6:
                        Established Place In The Marketplace And
                        Actual Confusion ................................. 22

i

**THOITS LAW**
A PROFESIONAL CORPORATION

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THOITS LAW**
A PROFESIONAL CORPORATION

(f)     Defendant Fails To Establish No Issue Of
Material Fact Exists As To Factor 7: Proof
Of Intentional Copying By The Defendant ...... 22

G.     Defendant's Survey Evidence Arguments Are Unsupported
by Fact or Law ...................................................... 23

V.     CONCLUSION ............................................................. 23

PLAINTIFF'S OPPOSITION TO DEFENDANT YA YA CREATIONS, INC.'S MOTION FOR SUMMARY
JUDGMENT

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albino v. Baca*,
  747 F.3d 1162 (9th Cir. 2014) ……………………………………………… 4

*Alphaville Design, Inc. v. Knoll, Inc.*,
  627 F.Supp.2d 1121 (N.D. Cal. 2009) …………………………………… 19

*Americana Trading Inc. v. Russ Berrie & Co.*,
  966 F.2d 1284 (9th Cir. 1992) …………………………………………… 15

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
  68 F.Supp.3d 1170 (C.D. Cal. 2014) …………………………………… 17

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ……………………………………………………… 4

*Audio Fidelity, Inc. v. High Fidelity Recordings*,
  283 F.2d 551 (9th Cir.1960)……………………………………………… 11

*British Airways Board v. Boeing Company*,
  585 F.2d 936 (9th Cir. 1978) …………………………………………… 4

*Carlough v. Amchem Prod., Inc.*,
  158 F.R.D. 314 (E.D. Pa. 1993) ………………………………………… 21

*Chrysler Corp. v. Vanzant*,
  44 F. Supp. 2d 1062 (C.D. Cal. 1999) ………………………………… 10

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
  251 F.3d 1252 (9th Cir. 2001) …………………………………………… 16

*Cont'l Lab'y Prod., Inc. v. Medax Int'l, Inc.*,
  114 F. Supp. 2d 992 (S.D. Cal. 2000)………………………… 5, 9, 10, 11, 22, 23

*DeLew v. Adamson*,
  293 F. App'x 504 (9th Cir. 2008) ……………………………………… 13

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,
  158 F.3d 1002 (9th Cir.1998) …………………………………………… 5

*Entrepreneur Media, Inc. v. Smith*,
  279 F.3d 1135 (9th Cir. 2002) …………………………………………… 4

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'n, Inc.*,
  198 F.3d 1143 (9th Cir. 1999) …………………………………… 6, 9, 17

*First Brands Corp. v. Fred Meyer, Inc.*,
  809 F.2d 1378 (9th Cir. 1987) …………………………………………… 6

THOITS LAW
A PROFESIONAL CORPORATION

iii

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
  826 F.2d 837 (9th Cir. 1987) ................................................. 6, 10, 22

*Garter–Bare Co. v. Munsingwear, Inc.*,
  (9th Cir. 1980) 650 F.2d 975 ....................................................13

*Global Manufacture Group v. Gadget Universe.com*,
  417 F.Supp. 2d 1161 (S.D.Cal. 2006)..........................................23

*In re Boston Beer Co. Ltd. Partnership*,
  198 F.3d 1370, (Fed. Cir. 1999) ............................................21, 22

*In re Louisiana Fish Fry Products Ltd*.,
  797 F.3d 1332 (Fed. Cir. 2015)..............................................21, 22

*In re Orbit Irrigation Prods.*, No. 85945781, *19
  (T.T.A.B. Jan. 31, 2017) ..........................................................19

*International Jensen, Inc. v. Metrosound U.S.A., Inc.*,
  4 F.3d 819 (9th Cir.1993)........................................................... 5

*International Union of Bricklayers & Allied Craftsman Local Union No.
  20, AFL-CIO v. Martin Jaska, Inc*., 52 F.2d 1401 (9th Cir. 1985) .............. 4

*Jacoves v. United Merch. Corp*.,
  9 Cal. App. 4th 88 (1992).........................................................13

*KingKong USA, Inc. v. Ekornes, Inc.*, 2006 WL 8434618 *4
  (C.D. Cal. Nov. 21, 2006) ........................................................19

*KP Permanente Make-Up, Inc. v. Lasting Impression I, Inc*.,
  408 F.3d 596 (9th Cir. 2005) ...................................................... 4

*L.D. Kichler Co. v. Davoil, Inc.*,
  192 F.3d 1349 (Fed. Cir. 1999) ..................................................19

*Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*,
  502 F.3d 504 (6th Cir. 2007) .....................................................18

*Levi Strauss & Co. v. Blue Bell, Inc*.,
  778 F.2d 1352 (9th Cir. 1985) ...............................................17, 19

*M-5 Steel Mfg., Inc. v. O'Hagin's Inc*,
  61 U.S.P.Q.2d (BNA) 1086, 1095 (T.T.A.B. 2001)..............................19

*Quoc Viet Foods, Inc. v. VV Foods, LLC*,
  192 F. Supp. 3d 1067 (C.D. Cal. 2016) ....................................... 7, 15

*Romero by & through Ramos v. Macy's, Inc.*,
  2016 WL 11621642, at *5 (S.D. Cal. Sept. 19, 2016) ....................13, 14

*Rubber Stamp Mgmt., Inc. v. Kalmbach Publ'g Co.*,
  No. C06-0277RSM, 2007 WL 1367718, at *4 (W.D. Wash. May 4,
  2007) ......................................................................11, 12, 23

THOITS LAW
A PROFESIONAL CORPORATION

iv

*Self–Realization Fellowship Church v. Ananda Church of Self–Realization*, 59 F.3d 902 (9th Cir.1995) ……………………………………… 8

*Steven W. Boney, Inc. v. Boney Servs.*, 127 F.3d 821 (9th Cir. 1997) ………………………………………23

*Switchmusic.com v. U.S. Music Corp.*, 416 F.Supp.2d 812 (C.D. Cal. 2006) …………………………………23

*Uniden Corp. of Am. V. Unipacific Corp.*, 1983 WL 44363 (C.D. Cal. Aug. 2, 1983) ……………………………10

*Vaughn v. Parker*, 2022 WL 2093719, at *7 (S.D. Cal. June 10, 2022) …….2, 4

*Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609 (9th Cir.1989)………………………………………5, 8

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205 (2005) ……………………………………………16

*Yellow Cab. Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F 3d 925 (9th Cir.2005) ……………………………………… 6

**Statutes**

15 U.S.C. Section 1052 ……………………………………… 6, 19

15 U.S.C. Section 1057(b) ……………………………………… 6, 15

15 U.S.C. Section 1125 ………………………………………16

Lanham Act Section 2 ……………………………………… 6

Lanham Act Section 32(1) ………………………………………15

Lanham Act Section 43(A)………………………………………16

**Other Authorities**

Jordan S. Ginsberg, *Class Action Notice: The Internet's Time Has Come*, 2003 U. CHI. LEGAL F. 739, 759 (2003) ………………………………21

**Rules**

FEDERAL RULES OF CIVIL PROCEDURE RULE 56 …………………………2, 4, 15

THOITS LAW
A PROFESIONAL CORPORATION

v

**THOITS LAW**
A PROFESIONAL CORPORATION

# I.   <u>INTRODUCTION</u>

Defendant's attack on the validity of Plaintiff's trade dresses is unsupported by fact or law. In particular, Defendant's conclusions that Plaintiff's trade dresses lack secondary meaning or acquired distinctiveness are unsupported by any of the evidence in the summary judgment record. Further, the summary judgment record establishes that Defendant's assertions about the evidence upon which its Motion relies are demonstrably false. Moreover, the summary judgment record raises questions of material fact that cannot be resolved on summary judgment.  As a result, the motion must be denied in all respects.

For example, Defendant's argument that it possesses unrebutted survey evidence establishing consumers do not associate Plaintiff's registered trade dress with a particular source (Mot. at 1) is directly contradicted by Plaintiff's expert Eddie Zaratsian's report, which states, "███████████████████ ██████████████████████████████████████████████████ ████████████████ Wilson Decl., Ex. 1, ¶ 30. At minimum, this evidence raises a question of material fact such that the issue of whether Plaintiff's trade dresses have acquired distinctiveness cannot be resolved on summary judgment. *See* Fed. R. Civ. P. 56.

Next, Defendant's claim that Plaintiff did not engage in paid advertising of its trade dresses (Mot. at 1) is directly contradicted by evidence that Plaintiff engaged in robust advertising efforts that transcended traditional broadcast, television, and print advertising media formats. Wilson Decl., ¶ 5. Here, Defendant willfully ignores the ████████████ Plaintiff spent annually on advertising the specific products at issue. At minimum, this evidence raises a question of material fact that cannot be resolved on summary judgment.

Next, Defendant's arguments that Plaintiff's trade dresses are not distinctive due to the length and manner of use (Mot. at 14), and because

1

Plaintiff's use of its trade dresses have not been exclusive (*Id.*) are unsupported by the summary judgment record, and in fact the evidence establishes the opposite is true. Wilson Decl., ¶ 3. Furthermore, Defendant's claims as to these ultimate facts are based largely on evidence presented in its expert's testimony, which is so fundamentally flawed such that it is inadmissible under the evidence rules. The same testimony is also directly contradicted by Plaintiff's experts, which renders Defendant's claims unsuitable for resolution on summary judgment. *See* Section IV.E, *infra*.

Because Defendant's legal conclusions can only be reached by weighing conflicting evidence directly bearing on issues of material fact and resolving those conflicts in Defendants' favor, the motion must be denied. That is, Defendant's Motion inherently asks this Court to go beyond the scope of Rule 56 and invade the province of the jury. *See Vaughn, infra.*  As such, Defendant cannot satisfy its burden on summary judgment, and Defendant's Motion must be denied.

## II.    <u>FACTUAL BACKGROUND</u>

Since 1995, Opulent has engaged in the design, distribution, marketing, offering for sale, and sale of elegantly and uniquely crafted entertainment and home décor pieces, including, but not limited to, chandelier dessert stands, candelabras, and lamps. Wilson, Decl., ¶ 3. Opulent has always sought to add charm, elegance, and beauty to each customer's special occasions and celebrations. *Id.* Plaintiff has for years sold its cake stand products on major e-commerce websites in retail stores such as Home Goods, TJ Maxx, Marshalls, Winners, Home Sense Canada and TK Maxx Europe. *Id.* at ¶ 5.

Opulent is the creator of the "Chandelier Cake Stand," and many other distinct trade dresses, all protected under federal or common trademark law. *Id.* Opulent's commitment to quality and beauty helped propel Opulent's brand to an overwhelming level of popularity among consumers. *Id.* After decades of

2

THOITS LAW
A PROFESIONAL CORPORATION

business, Opulent's loyal customer base spans the globe. *Id.*

Opulent owns trademarks for Opulent's dessert table, tiered dessert stand, and candelabra which are registered in the U.S. Trademark Office (Reg. Nos. 5,912,235; 4,729,340; 4,729,341; and 4,733,374). JvLS Decl., Ex. 4; Wilson Decl., Ex. 1. Opulent is the exclusive licensee of its designs and marks. The key to Opulent's success is the high quality and reputation of its products, which are closely associated by the public with Opulent's Designs. ECF Dkt. 42, ¶ 33. Opulent has used its designs continuously as the main identifier of its elegant and distinct décor pieces, and consistently promoted and used its trade dress throughout the U.S. *Id.*; Wilson Decl., ¶¶ 5-9. As a result, Opulent's trade dresses have become famous and a well-known indicator of the origin and quality of Opulent's products. Wilson Decl., ¶ 9, Ex. 2.

In contrast to Opulent's design innovation, Defendant has purposefully copied Opulent's designs in commerce without Opulent's authorization and has, in an unsophisticated manner, combined elements from several of Opulent's designs or rearranged Opulent's designs in an effort to trade on Opulent's trade dresses while feebly attempting to conceal its infringement. Wilson Decl., ¶ 2, Ex. 1. Defendant's intentional conduct is likely to cause confusion or mistake, or to deceive the public by causing consumers to believe Defendants' products originate with, or relate to, Opulent's goods, or are licensed from or associated with Opulent.

During the course of this action, the parties have engaged in extensive discovery over typical written discovery, including depositions of percipient witnesses and experts, conducting of surveys aimed at determining secondary meaning, and the formulation of reports comprising expert opinions on these same issues of ultimate fact. *See, e.g.* JvLS Decl., Exs. A-B; Wilson Decl., Exs. 1-2. As a result of the foregoing, the summary judgment record raises numerous issues of material fact as to each and every ultimate issue raised by

3

THOITS LAW
A PROFESIONAL CORPORATION

Defendant's Motion. *See* Wilson Decl. Exs., 1-2; and JvLS Decl., Exs. A-B.

## III.    LEGAL STANDARD ON SUMMARY JUDGMENT

"If there is a genuine dispute about material facts, summary judgment will not be granted." *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*); FED. R. CIV. P. 56. A fact is "material" when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The "burden of establishing that there is no genuine issue of material fact lies initially with the moving party and resolution of all doubts should be in favor of the party opposing the motion." *British Airways Board v. Boeing Company*, 585 F.2d 936, 951 (9th Cir. 1978). "'Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena.'" *KP Permanente Make-Up, Inc. v. Lasting Impression I, Inc*., 408 F.3d 596, 602 (9th Cir. 2005) quoting *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002).

When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson, supra*, 477 U.S. at 255. At this stage, "the judge's function is not ... to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Id.* at 249. "[I]t is the province of the jury to weigh the conflicting evidence and decide whose testimony to accept as true." *Vaughn v. Parker*, 2022 WL 2093719, at *7 (S.D. Cal. June 10, 2022). "Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper." *International Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc*. 52 F.2d 1401, 1405 (9th Cir. 1985).

THOITS LAW
A PROFESIONAL CORPORATION

## IV.    ARGUMENT

As set forth herein, the summary judgment record raises numerous questions of material fact as to each and every one of the legal issues upon which Defendant's Motion is brought. As a result, these issues cannot be resolved on summary judgment, and Defendant's Motion must be denied.

### A.    The Summary Judgment Record Establishes Numerous Questions Of Material Fact As To Whether The Trade Dresses Have Acquired Secondary Meaning

The summary judgment record establishes that there are numerous questions of material fact as to whether Plaintiff's trade dresses have acquired secondary meaning. As a result, these issues cannot be resolved on summary judgment, and Defendant's Motion must be denied.

In the Ninth Circuit, trade dress "refers to the 'total image of a product' and may include features such as size, shape, color, color combinations, texture or graphics." *International Jensen, Inc. v. Metrosound U.S.A., Inc.,* 4 F.3d 819, 822 (9th Cir.1993); *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613 (9th Cir.1989). To establish trade dress infringement, the holder of the trade dress must show (1) that its product design is non-functional, (2) that the design is inherently distinctive or has acquired a secondary meaning, and (3) that there is a likelihood of confusion. *Disc Golf Ass'n, Inc. v. Champion Discs, Inc*., 158 F.3d 1002, 1005 (9th Cir.1998); *Cont'l Lab'y Prod., Inc. v. Medax Int'l, Inc*., 114 F. Supp. 2d 992, 997 (S.D. Cal. 2000) ("*Continental*").

Defendant does not dispute that the product designs at issue are non-functional. Mot. at 1-26. Nor does it directly dispute the likelihood of confusion factor (Mot. at 20), presumably due to the clear evidence Opulent has in its possession on that issue. Declaration of Carol Wilson, ¶ 9, Exh. 2.

Defendant's sole argument, that Plaintiff's products do not have inherent distinctiveness or secondary meaning, fails on summary judgment. Defendant cites its own expert testimony and conclusory allegations about the

5

THOITS LAW
A PROFESIONAL CORPORATION

market and Opulent's products, yet wholly ignores most of the evidence in the record in this matter from Opulent. As set forth herein, Opulent's evidence is sufficient to establish secondary meaning; there is no question that at a minimum, it meets the threshold to survive summary judgment by presenting an issue of material fact. Indeed, the question as to whether a particular trade dress has acquired secondary meaning is itself a question of fact. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987); *see also Yellow Cab. Co. of Sacramento v. Yellow Cab of Elk Grove, Inc*., 419 F 3d 925, 930 (9th Cir.2005). Thus, where, as here, the plaintiff has evidence of secondary meaning, *i.e.* evidence that "the purchasing public associates the dress with a particular source," it is for the trier of fact to determine whether that evidence is sufficient and, therefore, not suited to summary judgment. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 843 (9th Cir. 1987), citing *First Brands, supra,* 809 F.2d at 1383.

A plaintiff can prove a product has acquired distinctiveness with different types of evidence: (1) evidence of a trademark registration; (2) compelling direct evidence; or (3) circumstantially through evidence of "exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market, and proof of intentional copying by the defendant." *Filipino Yellow Pages, Inc. v. Asian Journal Publ'n, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).

**B.    Opulent's Federal Registration Is *Prima Facie* Evidence Of Acquired Distinctiveness, And Thus Raises A Triable Issue As To That Product**

Registration of a mark under § 2 of the Lanham Act enables the owner to sue an infringer and entitles the owner to a presumption the mark is valid. *See* 15 U.S.C. §§ 1052; 1057(b). Thus, the very fact that Opulent's trade dress in the Chandelier Round Cake Stand (Reg. No. 5,912,235) is registered with the USPTO raises a question of fact. JvLS Decl., ¶ 4, Ex. A. Further, Defendant's

6

THOITS LAW
A PROFESIONAL CORPORATION

attempts to call the validity of the registration into question not only fail, they establish the existence of questions of material fact that prevent summary judgment at this stage.

As discussed further in Section IV., *infra*, on this point, Defendant engages in a self-serving but, ultimately, futile misconstruction of its cited authorities. The holding in *Quoc Viet Foods, Inc. v. VV Foods, LLC* fails to relate to the presumptions provided by registration and the timing issue identified by Defendant. Mot. at 7. It states merely that secondary meaning must exist prior to an infringer's use of the trade dress. *Quoc Viet Foods, Inc. v. VV Foods, LLC*, 192 F. Supp. 3d 1067, 1073 (C.D. Cal. 2016) (reversed and remanded). Thus, Defendant fails to provide any applicable authority for its assertion that the presumption "does not apply when the accused products were on sale prior to the registration." *Id.* Nevertheless, as set forth by direct and circumstantial evidence herein, the Chandelier Round Cake Stand trade dress has also acquired secondary meaning alongside each of Opulent's other products at issue in this case, and did so before Defendant's infringement.

## C. Direct Evidence Of Consumer Testimony Creates A Question Of Material Fact As To Whether The Unregistered Trade Dresses Have Acquired Secondary Meaning

Defendant incorrectly asserts Opulent has "no survey evidence" to support a finding of secondary meaning. Even if true, this is not dispositive, as consumer surveys are only one way to establish secondary meaning. Nevertheless, Opulent surveyed and submitted declarations from 53 customers in support of its application to register its product configuration for the Chandelier Cake Stands, and another 8 declarations for its Banded Cake Stands. Declaration of Carol Wilson ("Wilson Decl."), ¶ 2, Ex. 1. These declarations asserted that the products and specific trade dress configurations are distinctive to Opulent in the minds of each customer. *Id*. These customers also asserted that they recognize those trade dress elements of the Chandelier

7

THOITS LAW
A PROFESIONAL CORPORATION

product that "are made to look like chandeliers" as the Opulent brand, because they are "unique and distinctive and immediately recognizable" as an Opulent product. *Id*. Likewise, customers referred to the "ornate banding with an intricate floral infill design with round beads for feet" as the Blossom (or "banded") Cake Stand. *Id*. Defendant's attempt to minimize or dismiss this direct evidence as "unhelpful hearsay" is misguided and, on its face, creates a triable issue.

The credibility or weight of these declarations is squarely for the factfinder. Defendant cites *Continental* in support of its assertion that this direct evidence of more than ***sixty*** purchasers of Opulent products is entitled only to "*de minimus* evidentiary weight." Motion, at 9, fn. 3. Yet, the evidence in *Continental* was but ***two*** affidavits – one from a "long-time employee" and the other from the company's own consultant. *Id*. Further, the *Continental* plaintiff did not even claim these affidavits were direct evidence "such as consumer surveys and direct consumer testimony," and in fact admitted it did not have any direct evidence at all. *Id*. at 1000.

Furthermore, Defendant's attack on Plaintiff's survey evidence is untenable, because Defendant's own expert Parikh failed to conduct her survey on this issue with ***any*** direct evidence of an actual purchaser of Opulent products. ECF Dkt. 204-4 at 27 (limiting survey subjects to those who purchased only "serveware or tabletop décor for entertaining).

Likewise, in *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, cited by *Continental* court, the "only evidence" the plaintiff offered were "declarations of its employees and wholesalers." *Self–Realization Fellowship Church v. Ananda Church of Self–Realization*, 59 F.3d 902, 910 (9th Cir.1995). Employees, consultants and wholesalers are entirely distinct from "actual purchasers" of products. *Vision Sports* at 615 ("An expert survey of purchasers can provide the most persuasive evidence of secondary

THOITS LAW
A PROFESIONAL CORPORATION

8

meaning."). The combined 61 declarations alone provided as direct evidence of secondary meaning of the marks create, at minimum, a triable issue of fact and dispose of Defendant's Motion as to all of the products.

### D. Circumstantial Evidence Of Exclusive Use, Advertising, Sales Data, Market Position, And Evidence Of Copying Are Evidence Of Secondary Meaning That Establish Triable Issues As To Each Opulent Product

Opulent also has substantial circumstantial evidence of each factor considered to support a finding of secondary meaning. See *Filipino Yellow Pages, Inc.,* 98 F.3d at 1151. The analysis of these factors is inherently a factual question as there is no bright line rule or mechanism to quantify how much circumstantial evidence trade dress requires to establish the existence of secondary meaning. Opulent's evidence, which is either ignored or misconstrued in Defendant's Motion, serves as proof that the fundamental question of secondary meaning with respect to Opulent's products is a question for the jury.

As to the exclusive use, while Defendant again points to *Continental* to support a finding that Opulent's evidence similarly falls short, the case is easily distinguished. The court in *Continental* acknowledged, "[t]here is no talismanic number of months or years that establishes when an unregistered trademark or trade dress can obtain secondary meaning." *Continental*, *supra*, 114 F. Supp. 2d at 1004. A plaintiff's "time and exclusivity of use merely provide the opportunity to build source identification in the public mind." *Id.*

In *Continental*, despite a four-year period of exclusive use that the court determined would provide "ample time" to obtain secondary meaning, the plaintiff "undertook only trivial efforts" and did not provide any specific evidence of distribution of alleged advertising or promotional activities. *Id.* at 1005. Here, Opulent has sold the products at issue since 1995, and spent years creating and maintaining a unique and distinctive design and style in the

9

THOITS LAW
A PROFESIONAL CORPORATION

THOITS LAW
A PROFESIONAL CORPORATION

market. Wilson Decl., ¶ 3. Defendant's claim that the use was not exclusive because other companies have since copied the design is ironic and unsupported. Here, Defendant somehow hopes to be insulated from liability by committing the exact infringement for which it is liable.

Nevertheless, Defendant did not copy Opulent or introduce its infringing designs on the market until after the secondary meaning was established. As the Ninth Circuit has acknowledged, that established meaning and recognition is the very reason companies copy trade dress: "[D]eliberate copying may suffice to support an inference of secondary meaning" because there is an "assumption that a defendant would not copy a mark or design unless it (1) believed the mark or design had attained secondary meaning in the minds of consumers, and (2) intended to exploit this secondary meaning." *Fuddruckers,* 826 F.2d at 844; *Cont'l Lab. Prod., Inc. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992, 1008 (S.D. Cal. 2000).

In *Uniden Corp. of Am. V. Unipacific Corp.*, the court found that the plaintiff's trade dress, a cordless telephone style, had acquired distinctiveness through evidence of deliberate and close copying, in addition to the plaintiff's advertising featuring the trade dress and sales volume. *Uniden Corp. of Am. V. Unipacific Corp.*, 1983 WL 44363 (C.D. Cal. Aug. 2, 1983). The same applies to Lamps Plus, who Opulent also ultimately sued, after it began copying Opulent's products in 2014, after Opulent's trade dress had already been established in the market for nearly 20 years.

As to intent to copy, Defendant again overstates the holding of its cited authorities. Motion at 14-15. In *Chrysler Corp. v. Vanzant*, the district court acknowledged the Ninth Circuit's holding that, "in appropriate circumstances, deliberate copying may suffice to support an inference of secondary meaning." *Chrysler Corp. v. Vanzant*, 44 F. Supp. 2d 1062, 1081 (C.D. Cal. 1999); citing *Audio Fidelity, Inc. v. High Fidelity Recordings,* 283 F.2d 551, 557–58 (9th

10

Cir.1960). Those circumstances depend on the reason for the copying – if the infringer copied with the intent to deceive the public as to origin or because it perceived the trade dress had secondary meaning that is "significantly probative to permit a reasonable trier-of-fact to infer that the design had secondary meaning… at the time [the infringer] copied it. 1081-1082. The inference is not drawn where the alleged infringer copied for functional purposes. *Id*.

Here, Defendant admitted that it was "inspired" by products in a catalog that look identical to, and contain the trade dress of, Opulent. JvLS Decl., ¶ 5, Ex. B [Excerpt from Deposition of Mitchell Su (30(b)6 Deposition of Ya Ya Creations, Inc.) 68:6-69:4]. While it has not outright admitted to copying Opulent directly, there is no doubt Defendant was aware of Opulent's trade dress when it created and introduced its infringing products to the market. Clearly, the inference of secondary meaning applies here, as functionality is not at issue and the purpose of the copying was to trade on the established secondary meaning of Opulent's products. Moreover, even if intentional copying alone was insufficient, this is yet another fact-based material issue in dispute, which cannot be resolved on summary judgment.

As to evidence of advertising and promotional activities, *Continental* court emphasized that the essential analysis of this factor focuses not necessarily on dollars spent, but on whether the ads or promotions feature "in some way the trade dress itself." *Continental* at 1000. There, the ads had no clear depiction of the trade dress elements, nor did the plaintiff provide any specific data as to the distribution channels or volume of the advertising efforts. *Id*. at 1002. Likewise, in Defendant's other cited case, *Rubber Stamp Mgmt., Inc. v. Kalmbach Publ'g Co*., the advertising efforts offered by plaintiff lacked evidence of the consumers' actual association of the mark with the product or an effort to direct the consumer to make the association. *Rubber*

11

THOITS LAW
A PROFESIONAL CORPORATION

*Stamp Mgmt., Inc. v. Kalmbach Publ'g Co.,* No. C06-0277RSM, 2007 WL
1367718, at *4 (W.D. Wash. May 4, 2007).

In contrast, Opulent's promotional activities include extensive paid and
unpaid advertising and product features, as well as organic recognition on
various internet platforms, all of which achieve the critical step of featuring
the trade dresses and associating it with the source in the public's mind. First,
Opulent has consistently advertised the products in a variety of formats,
including magazines, email advertising and online in blogs, YouTube,
Pinterest and social media. Wilson Decl., ¶¶ 5-7. ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ *Id.,* ¶ 8. Defendant's criticism of advertising expenditures again
misconstrues the applicable case law, and ignores this totality of advertising
and promotional efforts for the products.

For example, this expenditure does not include Opulent's advertising
efforts on its own website, www.opulenttreasures.com, which has received
more than 760,663 hits since 2016, and 120,000 hits in 2020 alone. *Id.* It also
does not include organic advertising via platforms like Pinterest.com, which
had 5.2 million monthly views in 2020 alone, and over 21,000 followers with
"pins" (or images and links to the products) have been engaged with 30
million times. *Id.* Opulent is also featured on numerous individual company
Pinterest, Instagram accounts and blog sites that have more than 10 million
monthly views and millions of followers each. *Id.* Opulent has also received
significant unpaid media attention from major media outlets including
*Romantic Homes*, *Vintage Magazine NYC*, *People*, *Buzzfeed*, *Prime Living*, *C
Magazine* and *U.S. Weekly*, as well as features on television networks
including QVC, Bravo, E!-News, Nickelodeon, HGTV and programs such as
the *Today Show*, *The Real Housewives*, *Keeping Up with The Kardashians*,

and *Vanderpump Rules*. *Id*. *People Magazine* has a circulation of approximately 3.4 million per issue and U.S. Weekly approximately 1.9 million per issue. *Id*. Opulent has also maintained a presence on Amazon as a Registered Brand since June 2017. *Id*.

Most importantly, in Opulent's paid and unpaid promotional materials, the trade dress itself is the primary feature. Not only are these specific trade dress elements depicted in photographs, but the copy in Opulent's ads also focuses on the trade dress. For example, in its advertisements Opulent emphasizes that it designs its own "original" pieces and puts the focus on the distinctive configuration. *Id*. Ultimately, this evidence raises questions of material fact for the jury.

### E.    Summary Judgment Is Inappropriate Because Material Fact Issues Are Disputed By Experts

Furthermore, the summary judgment record establishes that the parties' respective experts dispute issues of material fact. The Ninth Circuit is clear: "Conflicting expert testimony on ultimate issues of fact cannot be resolved on summary judgment." *Romero by & through Ramos v. Macy's, Inc.*, 2016 WL 11621642, at *5 (S.D. Cal. Sept. 19, 2016) citing *Garter–Bare Co. v. Munsingwear, Inc.* (9th Cir. 1980) 650 F.2d 975, 979-80, 982 (reversing district court's grant of summary judgment where parties provided conflicting expert testimony and district court granted summary judgment by relying solely on the moving party's expert testimony); *see also Jacoves v. United Merch. Corp.*, 9 Cal. App. 4th 88, 106 (1992). "[T]he Ninth Circuit has cautioned against granting summary judgment where expert guidance is needed and where there are competing expert declarations." *Id.*; *DeLew v. Adamson,* 293 F. App'x 504, 506 (9th Cir. 2008) ("The existence of conflicting expert assessments suggests that neither party is entitled to summary judgment.").

THOITS LAW
A PROFESIONAL CORPORATION

13

THOITS LAW
A PROFESSIONAL CORPORATION

Here, Opulent commissioned several experts to examine evidence and develop scientific data in order to determine whether Opulent's configurations had obtained secondary meaning. Wilson Decl., ¶ 9. This evidence, and the experts' opinions as to its meaning, are critical in view of Defendant's Motion, because the opinions of Opulent's experts are diametrically opposed to the conclusions of Defendant's expert. Opulent retained expert Rhonda Harper, M.B.A. in May 2022 to conduct a survey as to the trade dress at issue. Wilson Decl., ¶ 9, Exh. 2. ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████ *Id*., Ex. 2. ████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

Conversely, Defendant provides the opinion and survey results of its expert Parikh as conclusive that no secondary meaning has been established for the Opulent products. ECF Dkt. 204-4. As a result, this "[c]onflicting expert testimony on ultimate issues of fact [pertaining to secondary meaning] cannot be resolved on summary judgment." *Romero, supra*.

Furthermore, Defendant's Motion, to the extent it is based on Parikh's survey evidence, raises severe credibility issues as to both Defendant's testimony and her survey, which utilized a single Opulent product, extrapolated its results to all of the other products at issue, and concluded based on cherry-picked case law that the 7% difference between surveyed groups was insufficient to establish secondary meaning. ECF Dkt. 204-4.

Moreover, Parikh's survey is fatally flawed due to her failure to identify even a reasonable universe of respondents. As set forth in Plaintiff's objections to the expert report concurrently filed herewith, Parikh's failure to create a

14

survey even remotely targeting actual purchasers of Opulent's products renders it unreliable and, thus, inadmissible under FRE 702. Further, because Parikh concluded that Opulent's products had not obtained secondary meaning, the report is highly prejudicial. ECF Dkt. 204-4, ¶ 53. Given the report's little if any probative value, the same is substantially outweighed by undue prejudice and likely to confuse a jury at trial. As a result, the report is further inadmissible under FRE 403. *See* Objections to Expert Report and Testimony of Dr. Sara Parikh.

**F.    Defendant's Authorities Fail To Support Its Legal Conclusions**

In addition to Defendant's failure to meet Rule 56's high but fundamental standards, Defendant's arguments rely on authorities that are readily distinguishable, inapposite, or clearly uncitable. Each of Defendant's problematic arguments is addressed below.

**1.    Defendant's Attack On Plaintiff's Infringement Claim Under § 32(1) Of The Lanham Act Fails**

Defendant's attack on Plaintiff's infringement claims under Section 32(1) of the Lanham Act fails, because the authorities upon which Defendant relies are uncitable and otherwise inapposite. Motion at 7. Plaintiff is entitled to the presumption of secondary meaning with respect to its registered trade dress (U.S. Reg. No. 5,912,235). 15 U.S.C.§ 1057(b); A*mericana Trading Inc. v. Russ Berrie & Co*., 966 F.2d 1284, 1287 (9th Cir. 1992). Although Defendant argues Plaintiff is not entitled to a presumption of secondary meaning, because the "presumption does not apply when the accused products were on sale prior to the registration," (Motion at 7), Defendant fails to offer any controlling case law or other authority in the Ninth Circuit or Central District that support its sole argument on this point. *Id.* Nor has Plaintiff identified any such case law.

Instead, Defendant's reliance on *Quoc Viet Foods,* is misplaced, as that decision was subsequently vacated (761 Fed. App'x 784 (9th Cir. 2019)).

15

THOITS LAW
A PROFESIONAL CORPORATION

Moreover, that case did not involve any principally registered marks. *Id.* As a result, Defendant offers no basis on which to attack the presumption of secondary meaning as to Plaintiff's registered trade dresses.

### 2.    Defendant's Authorities Fail To Support Its Attack On Plaintiff's Claims Under § 43(A) Of The Lanham Act

As discussed above, Defendant fails to establish Plaintiff's registered trade dress (U.S. Reg. No. 5,912,235) is not entitled to the presumption of validity or secondary meaning. Further, the summary judgment record establishes Defendant cannot show that as a matter of law, Plaintiff's infringement claim under Section 43(A) of the Lanham Act should be dismissed. Application of the correct factor analysis establishes there are numerous issues of material fact that render summary judgment improper.

To prevail on a claim of trade dress infringement under 15 U.S.C. § 1125(a), Plaintiff must show: (1) the claimed trade dress is nonfunctional; (2) the claimed trade dress is inherently distinctive or has acquired secondary meaning; and (3) the defendant's product creates a likelihood of confusion. *Clicks Billiards, Inc. v. Sixshooters, Inc*., 251 F.3d 1252, 1258 (9th Cir. 2001). Defendant's entire Motion is based on the argument that there is no issue of material fact with respect to the second factor—whether each of Plaintiff's claimed trade dresses has acquired secondary meaning.

While Defendant correct that Plaintiff has the burden of proving secondary meaning *at trial* with respect to its unregistered trade dress claims under 15 U.S.C. § 1125(a) (*Wal-Mart Stores, Inc. v. Samara Bros., Inc*., 529 U.S. 205, 216 (2005)), it is Defendant's burden to show on summary judgment that Plaintiff cannot, nor will it be able to do so as a matter of law. Instead, its arguments establish that material factual issues remain in dispute that cannot be resolved on summary judgment.

THOITS LAW
A PROFESIONAL CORPORATION

1    Secondary meaning is the "mental association by a substantial segment of

2  consumers and potential customers between the alleged trade dress and a single

3  source of the product." *Levi Strauss & Co. v. Blue Bell, Inc*., 778 F.2d 1352,

4  1354 (9th Cir. 1985). In assessing whether secondary meaning has been

5  achieved, a non-exhaustive list of factors is considered, including: "(1) direct

6  consumer testimony or consumer perception; (2) exclusivity, manner, and

7  length of use; (3) amount and manner of advertising; (4) amount of sales and

8  number of customers; (5) established place in the market; (6) actual confusion;

9  and (7) proof of intentional copying by the defendant." *Amini Innovation Corp.*

10  *v. McFerran Home Furnishings, Inc*., 68 F.Supp.3d 1170, 1173 (C.D. Cal.

11  2014) (*citing Filipino Yellow Pages* at 1152 (9th Cir. 1999)).  While

12  Defendant's Motion attempts to argue five of the seven factors listed above

13  (Mot. at 11-13), the *Amini* Court, when faced with similar arguments on

14  summary judgment, found "this approach [to be] problematic, because this list

15  of factors is non-exhaustive and the factors are to be evaluated

16  comprehensively, with different factors being given different weight depending

17  on the situation." *Amini*, 68 F.Supp.3d at 1173 (C.D. Cal. 2014) (denying

18  summary judgment).

19    Further, the court found, "while the Defendants repeatedly assert there is

20  no genuine issue as to any material fact, their summary judgment motion is

21  largely comprised of simple comparative analysis of each side's evidentiary

22  offerings—in short, [ ] asking the Court to act not as summary adjudicator, but

23  as the trier of fact on questions properly left to a jury." *Id*. Here, the same

24  problematic arguments are made by Defendant and, for the same reasons,

25  summary judgment should be denied.

26

27

28

**THOITS LAW**
A PROFESIONAL CORPORATION

17

**(a)      Defendant Fails To Establish No Issue Of Material Fact Exists As To Factor 1:  Direct Consumer Testimony Or Consumer Perception**

First, Defendant argues that it is "undisputed" that Defendant's survey evidence establishes consumers do not associate Opulent Treasures' registered trade dress with Plaintiff.[1] Mot. at 8-9. However, as discussed above, Plaintiff's registered trade dress is entitled to a presumption of secondary meaning, and Plaintiff's surveys and expert's reports raise sufficient questions of material fact to overcome summary judgment. *See* Wilson Decl., ¶ 9, Ex. 2 ██████████ ████████ and *Id.*, Ex. 1 at 9 and Exs. K & L ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████ *Id.* at 8. Far from "undisputed," Defendant asks this Court to give greater weight to its methodologically unsound survey than Plaintiff's experts' reports, thus establishing the existence of a material fact issue with respect to consumer testimony and perception.

**(b)      Defendant Fails To Establish The Absence Of Material Fact As To Factor 2: Exclusivity, Manner, Length Of Use**

Next, Defendant fails to establish no material fact exists as to Factor 2. Defendant contends Plaintiff has not maintained exclusivity, because Lamps Plus has been selling similar products since 2014.  Mot. at 14.  However, here again, Defendant asks this court to weigh the evidence, not decide whether a genuine issue of material fact actually exists. Specifically, a showing of

---

[1] *See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 518-19 (6th Cir. 2007) (affirming district court's finding Dr. Parikh's study could not serve as dispositive proof of likelihood of confusion where, among other deficiencies, Parikh failed to limit the respondent population to actual purchasers of opponent's products).

18

THOITS LAW
A PROFESIONAL CORPORATION

secondary meaning "does not require absolutely exclusive use", but simply, "***substantially*** exclusive" use. *Alphaville Design, Inc. v. Knoll, Inc.*, 627 F.Supp.2d 1121, 1131 (N.D. Cal. 2009) citing *L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1352 (Fed. Cir. 1999) (emphasis added); 15 U.S.C. § 1052(f). As such, "the mere use of a mark by a third party may not be sufficient to defeat a claim of substantially exclusive use," and Defendant's reliance on a single third-party selling similar products is far from sufficient to undermine Plaintiff's exclusivity of use. *Id.*; *see also KingKong USA, Inc. v. Ekornes, Inc.*, 2006 WL 8434618 *4 (C.D. Cal. Nov. 21, 2006) ("use by others which may be inconsequential or infringing . . . does not necessarily invalidate the applicant's claim"). At minimum, this is a material question of fact.

Further, Defendant's authorities are readily distinguishable because those cases concerned "widespread and common use" by others of the applied-for mark, not a single third party seller. *See Levi Strauss, supra; In re Orbit Irrigation Prods.*, No. 85945781, *19 (T.T.A.B. Jan. 31, 2017) (not citable as precedent of T.T.A.B. and "numerous[] independent users" of applied-for mark); *M-5 Steel Mfg., Inc. v. O'Hagin's Inc*, 61 U.S.P.Q.2d (BNA) 1086, 1095 (T.T.A.B. 2001) (not citable as precedent of T.T.A.B. and relying on expert testimony that applicant's roof vents were indistinguishable from those of at least three other companies). Here, Defendant fails to point to any "widespread and common use" in the record that establishes an absence of material fact issues.

Next, Defendant argues Plaintiff's total product sales are insufficient to show manner and length of use to confer secondary meaning. Mot. at 10. However, Defendant's authorities referring to parties expending tens of millions on advertising concern parties whose advertising budget is exponentially greater than the total revenues of Plaintiff. *Id.*; In short, Defendant cites to cases having

19

THOITS LAW
A PROFESIONAL CORPORATION

starkly different facts to improperly characterize Plaintiff's advertising as insufficient to support a finding of secondary meaning. *Id.*

Specifically, Defendant ignores Plaintiff's great success and widespread recognition in the event planning and entertainment industries. *Id.*; Wilson Decl., ¶ 2 Ex. 1 at 8. Plaintiff's extensive advertising efforts are carefully targeted toward "professional party organizers" and "individual buyers organizing their own events" so that a large audience of potential consumers is captured nationwide. *Id.* at 9.

Further, Mr. Zaratsian opined that the amount Plaintiff has expended for advertising "is significant for a relatively small company like Opulent in the party organizer's/entertainment market." *Id.* Thus, Defendant's arguments regarding advertising fail to place Plaintiff's advertising expenditures in context, and also ignore the substantial, unsolicited media coverage that has obviated the need for greater advertising outlays. *See* Section IV.D, *supra*; Wilson Decl., ¶ 6, Ex. 1 at 9; SAC ¶ 24. Accordingly, the summary judgment record raises clear issues of material fact with respect to the exclusivity, manner, and length of use of Plaintiff's trade dresses.

### (c)    Defendant Fails To Establish No Issue Of Material Fact Exists As To Factor 3: Amount and Manner of Advertising

Likewise Defendant simply concludes that the amount of money Plaintiff spent on advertising is not enough to confer secondary meaning.  However, in view of the foregoing Section IV.F.2.a., *supra*, Defendant's conclusion is unsupported by any authority or the summary judgment record.

Defendant also completely ignores that Plaintiff has reached millions of consumers through "pins" shared on Pinterest.com and has received unsolicited media attention through the various outlets noted above,  Wilson Decl., ¶ 6. Further, Defendant's authorities establish that it is the factual analysis underpinning any amount spent, and not the simply the amount, that determines

20

THOITS LAW
A PROFESIONAL CORPORATION

the existence of secondary meaning.  *See e.g., Rubber Stamp, supra* ("a large expenditure of money in advertising does not, of itself, create legally protectable rights"); *In re Boston Beer Co. Ltd. Partnership*, 198 F.3d 1370, (Fed. Cir. 1999) (affirming denial of trademark application because trademark slogan was merely descriptive, not because an insufficient amount was spent on advertising); *In re Louisiana Fish Fry Products Ltd.*, 797 F.3d 1332, 1336 (Fed. Cir. 2015) (affirming denial of trademark application because mark was "highly descriptive" and thus faced a higher burden to establish acquired distinctiveness).

While simply reciting a dollar amount may in some cases provide an indication of customer reach, this is certainly not always the case, even in the context of traditional broadcast, television, or print media. *See, e.g.,* Jordan S. Ginsberg, *Class Action Notice: The Internet's Time Has Come*, 2003 U. Chi. Legal F. 739, 759 (2003) quoting *Carlough v. Amchem Prod., Inc.*, 158 F.R.D. 314, 316 (E.D. Pa. 1993) ("more costly  notice efforts, such as network broadcast advertising, often result in attempts that are 'unduly time-consuming and expensive, and not necessarily fruitful…').

Moreover, this metric of dollars spent fails to establish customer reach in cases such as this where non-traditional advertising formats are used. *See, e.g.*, Ginsberg, *supra* ("Providing notice on the internet, regardless of the specific form that the notice takes, costs substantially less than advertising through either the television or traditional print media."). In view of the foregoing, Defendant cannot possibly show that no issue of material fact exists as to the sufficiency of Plaintiff's advertising efforts.

>           (d)    **Defendant Fails To Establish No Issue Of Material Fact Exists As To Factor 4: Amount Of Sales, Number Of Customers**

Next, Defendant appears to conflate amount of sales with Factor 2 above. Mot. at 11-12.  Here, Defendant simply recites sales amounts for each product

21

THOITS LAW
A PROFESIONAL CORPORATION

and cites the same above identified cases that are factually irrelevant here. *Id.*
Among other things, those cases concern marks deemed descriptive, which is
not an issue here.  *See e.g., In re Boston, supra*, and *In re Louisiana Fish Fry,
supra*; Mot. at 11-13. In addition, Defendant attempts to refute Plaintiff's sales
records by arguing that even if the produced sales data is correct, it is still
insufficient to show secondary meaning.  Mot. at 13, fn. 6.  However, this is a
question of material fact and cannot be resolved on summary judgment.

**(e)  Defendant Fails To Establish No Issue Of Material
Fact Exists As To Factors 5 Or 6: Established
Place In The Marketplace And Actual Confusion**

Next, Defendant does not address at all Factors 5 or 6. As a result,
Defendant's Motion fails to show that no material issue of fact exists as to these
factors. "Evidence of actual confusion is persuasive proof that future confusion
is likely." *Fuddruckers* at 849. Here, the summary judgment record includes
survey evidence evaluated in Mr. Zaratsian's report, which establishes
consumers are likely to be confused between Defendant's knock-off products
and Plaintiff's protected trade dresses, and thus also raises a question of
material fact. Wilson Decl., ¶ 2, Ex. 1.

**(f)  Defendant Fails To Establish No Issue Of Material
Fact Exists As To Factor 7: Proof Of Intentional
Copying By The Defendant**

As to Factor 7, Defendant actually admits to copying, but claims it copied
the designs of a third party. Mot. at 14.  Defendant, however, fails to identify
that third party. *Id.* Indeed, Defendant must make this argument, because
"[e]vidence of deliberate copying may…support an inference of secondary
meaning."  *Continental* at 1000 (citing *Fuddruckers*, 826 F.2d at 844-45 (9th
Cir. 1987). A side by side comparison of Plaintiff's and Defendant's products
shows the striking similarity between the designs and, at minimum, raises a
clear issue of material fact as to whether Defendant intentionally copied
Plaintiff's designs. Wilson Decl., Ex. 1

THOITS LAW
A PROFESIONAL CORPORATION

### G.    Defendant's Survey Evidence Arguments Are Unsupported by Fact or Law

Defendant's final argument, that Plaintiff cannot show trade dress rights as a matter of law without survey evidence, is wholly unsupported by fact or law. Defendant cites no case in which a single survey was dispositive, nor can it.  This is because, as described above, a Plaintiff can establish secondary meaning through circumstantial evidence.  *Continental* at 1000.

Moreover, Defendant's authorities pertain to vastly different types of marks with completely different underlying facts. *See e.g., Rubber Stamp*, *supra* (concerning a purple arch trademark); *Continental* at 992 (concerning trade dress of container that holds laboratory pipettes); *Steven W. Boney, Inc. v. Boney Servs.*, 127 F.3d 821 (9th Cir. 1997) (concerning trade name of grocery store); G*lobal Manufacture Group v. Gadget Universe.com*, 417 F.Supp. 2d 1161 (S.D.Cal. 2006) (concerning trade dress of upright motorized scooter); *Switchmusic.com v. U.S. Music Corp*., 416 F.Supp.2d 812 (C.D. Cal. 2006) (concerning trade dress of guitar body). As a result, Defendant's last effort to undercut the sufficiency of Plaintiff's claims and evidence fails to save its Motion from the above fatal deficiencies.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied.


Dated: March 21, 2023                               **THOITS LAW**


                                        By:    /s/ *John van Loben Sels*
                                               John van Loben Sels
                                               Melissa K. Zonne
                                               Brittany M. Nobles
                                        ***Attorneys for Plaintiff,***
                                        **OPULENT TREASURES, INC.**

**THOITS LAW**

**A PROFESIONAL CORPORATION**

23

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on March 21, 2023, I filed this Plaintiff's

3  Opposition To Defendant Ya Ya Creations, Inc.'s Motion For Summary

4  Judgment via the Court's CM/ECF system, which will send notice of the

5  electronic filing to all counsel required to be served.

6

7   Dated: March 21, 2023

8                                            By: /s/ John van Loben Sels

9                                                **John van Loben Sels**

10

11

**THOITS LAW**
A PROFESIONAL CORPORATION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT YA YA CREATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT