John van Loben Sels (SBN 201354)
jvanlobensels@thoits.com
Melissa K. Zonne (SBN 301581)
mzonne@thoits.com
Brittany M. Nobles (SBN 343513)
bnobles@thoits.com
**THOITS LAW**
A Professional Corporation
400 Main Street, Suite 205
Los Altos, California 94022
Telephone:  (650) 327-4200
Facsimile:  (650) 325-5572

*Attorneys for Plaintiff,*
OPULENT TREASURES, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OPULENT TREASURES, INC., <br><br> Plaintiff, <br><br> v. <br><br> YA YA CREATIONS, INC., BALSA CIRCLE, LLC, LEILANI WHOLESALE, CHAIR COVER FACTORY, INC., AND CHICAGO CHAIR COVERS, INC., <br><br> Defendants. | Case No.:  2.22-cv-02616-SSS-JC <br><br> **PLAINTIFF OPULENT TREASURES, INC.'S OBJECTIONS TO EXPERT REPORT AND TESTIMONY OF DR. SARA PARIKH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** <br><br> Hon. Sunshine S. Sykes <br> Dept.: 2 <br><br> Pretrial Conference: June 20, 2023 <br> Trial Date: July 10, 2023 |
| YA YA CREATIONS, INC. <br><br> Counterclaimant, <br><br> v. <br><br> YA YA CREATIONS, INC., BALSA CIRCLE, LLC, LEILANI WHOLESALE, CHAIR COVER FACTORY, INC., AND CHICAGO CHAIR COVERS, INC., <br><br> Counterdefendant. | |

**THOITS LAW**
A PROFESIONAL CORPORATION

1

Plaintiff Opulent Treasures, Inc. ("Plaintiff" or "Opulent") hereby submits its Objections to Evidence in Support of Plaintiff's Opposition to Defendant Ya Ya Creations, Inc.'s ("Defendant") Motion for Summary Judgment (the "Motion").

## OBJECTIONS TO PARIKH EXPERT REPORT PURSUANT TO FRE 702 AND 403

Plaintiff hereby objects to the admissibility of the expert report of Plaintiff's expert Dr. Sara Parikh under FRE 702, because the opinions expressed by Dr. Parikh in her report are not based on sufficient facts or data, and the testimony is not based on reliable principles or methods. *See* FED. R. CIV. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has app*lied the principles and methods reliably to the facts of the case*.

FED. R. EVID. 702. "Admissibility of a survey is a threshold question that must be resolved by a judge." *Simpson Strong-Tie Co. Inc. v. MiTek Inc*., 2023 WL 137478, at *2 (N.D. Cal. Jan. 9, 2023) quoting *M2 Software, Inc. v. Macacy Entm't*, 421 F.3d 1073, 1087 (9th Cir. 2005).

"To be admissible, expert testimony must be relevant (or helpful) and reliable." *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc*., 209 F.R.D. 159, 162 (C.D. Cal. 2002) citing *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). "Rule 702 of the Federal Rules of Evidence tasks a district court judge with 'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Elosu v. Middlefork Ranch Inc*., 26 F.4th 1017, 1023 (9th Cir. 2022)

quoting *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. at 597, 113 S.Ct. 2786. That is, "[e]xpert testimony must be relevant to, and fit the facts of, the instant case." *TDN Money Sys., Inc. v. Everi Payments*, *Inc*., 2017 WL 5148359, at *10 (D. Nev. Nov. 6, 2017), *aff'd*, 796 F. App'x 329 (9th Cir. 2019).

"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc*., 738 F.3d 960, 969 (9th Cir. 2013). Here, Dr. Parikh's report is neither relevant nor reliable. As a result, it is not admissible for any purpose.

Dr. Parikh's report opines on the legal question of whether Plaintiff's trade dresses at issue in the action have 'secondary meaning.'  ECF Dkt. 204-4, ¶ 54. "The Ninth Circuit has defined secondary meaning as, 'the mental association by a substantial segment of consumers and potential customers between the alleged [trade dress] and a single source of the product.'" *Express, LLC v. Forever 21, Inc*., 2010 WL 3489308, at *7 (C.D. Cal. Sept. 2, 2010) quoting *Levi Strauss & Co. v. Blue Bell, Inc*., 778 F.2d 1352, 1354 (9th Cir.1985) (en banc). In particular, "A plaintiff's trade dress acquires secondary meaning when the ***purchasing public*** associates the dress with a particular source." *Vision Sports, Inc. v. Melville Corp*., 888 F.2d 609, 615 (9th Cir.1989) (emphasis added). As to the "purchasing public," the inquiry concerns "whether ***actual purchasers*** associate [Plaintiff's] trade dress with [Opulent] products..." *Id.* citing *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1015 (9th Cir.1985) (emphasis added).

Further, "An expert survey of purchasers can provide the most persuasive evidence of secondary meaning." *Levi*, 778 F.2d at 1358. "If the flaws in the proposed survey are too great, the court may find that the probative value of the

3

THOITS LAW
A PROFESIONAL CORPORATION

survey is substantially outweighed by the prejudice, waste of time, and confusion it will cause at trial." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 452 F. Supp. 2d 772, 779 (W.D. Mich. 2006), *aff'd*, 502 F.3d 504 (6th Cir. 2007); *see also*, FED. R. EVID. 403.

Although Dr. Parikh's report opines on the question of whether Plaintiff's trade dresses have acquired secondary meaning (ECF Dkt. 204-4, ¶ 5), Dr. Parikh's legal conclusions on this issue are unsound, because the population sample Dr. Parikh used to conduct the survey from which her opinion is derived is both overly broad and fails to select a sample from the proper universe of participants. Because these flaws in the survey are fundamental and severe, and ultimately impact the entire survey, the survey and Dr. Parikh's opinion are not only unreliable in the context of FRE 702, but given Dr. Parikh's conclusion that Opulent's trade dress possesses no secondary meaning, they are also highly prejudicial—so much so that any probative value of the survey or Dr. Parikh's testimony concerning the same is substantially outweighed by the risk of prejudice and the confusion that they will cause at trial. *See* FED. R. EVID. 403.

> Courts consider the selection of the proper universe as one of the most important factors in assessing the validity of a survey as well as the weight that it should receive. *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 264 (5th Cir.1980) (stating that "one of the most important factors in assessing the validity of an opinion poll is the adequacy of the 'survey universe,' that is the persons interviewed must adequately represent the opinions which are relevant to the litigation") (quoting *Am. Basketball Ass'n v. AMF Voit, Inc.*, 358 F.Supp. 981, 986 (S.D.N.Y.1973), aff'd 487 F.2d 1393 (2d Cir.1973)).

*Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 452 F. Supp. 2d 772, 781 (W.D. Mich. 2006), *aff'd*, 502 F.3d 504 (6th Cir. 2007).

Here, Dr. Parikh's survey subjects were "purchasers of serveware or tabletop decor for entertaining," (ECF Dkt. 204-4 at 13, ¶ 33), none of whom were ever determined to be "actual purchasers" of Opulent's products, or of actual cake stands or any other product at issue in this action. ECF Dkt. 204-4 at

4

THOITS LAW
A PROFESIONAL CORPORATION

THOITS LAW
A PROFESIONAL CORPORATION

2-34. As it stands, there is no metric or means by which Dr. Parikh's survey identified actual purchasers of Opulent's products. ECF Dkt. 204-4.

Although the population sample *could have* comprised individuals who purchased a cake stand, serving platter, or candelabra as suggested by the selection criteria questions (ECF Dkt. 204-4 at 13, ¶ 33), the category was in no way ever limited to these three subcategories of products or another subcategory that would have been likely to encompass them. *Id.* In particular, the scope of "serveware or tabletop décor for entertaining" is far broader than the "actual purchasers" of Opulent's products that the Ninth Circuit considers the appropriate sample for a survey performed to determine whether a trade dress has obtained secondary meaning. *See Vision Sports, supra.*

Further, the term "serveware" is overly broad and ambiguous and, in some cases, an unrecognized term in American English. For example, the well-known American dictionaries *The American Heritage Dictionary*[1] and *Merriam Webster Dictionary* have no entry for the term "serveware."[2] Nor does the *Encyclopedia Britannica*.[3]

Where the term is recognized, for example by European based companies, it is broad, varied, and can encompass, "Utensils from which food is served at table, such as platters, tureens and shakers,"[4] be considered an all-inclusive term for "bowls, beverage pots, compotes, nut bowls, platters, salt cellars and salt shakers, pepper shakers and pepper mills, salvers, sauceboats

---

[1] https://www.ahdictionary.com/word/search.html?q=serveware. Accessed March 21, 2023.

[2] https://www.merriam-webster.com/dictionary/serveware. Accessed March 21, 2023.

[3] https://www.britannica.com/search?query=serveware. Accessed March 21, 2023.

[4] *See* WordSense Dictionary (https://www.wordsense.eu/serveware/), which obtains references from Wikipedia, Cambridge Dictionary Online, Oxford English Dictionary, Webster's Dictionary 1913 and others. Accessed March 21, 2023.

OBJECTION TO EXPERT REPORT AND TESTIMONY OF DR. SARA PARIKH

and gravy boats, trays, and tureens;"[5] or be used as a synonym to tableware, including specifically "plates, bowls, and cocottes."

The omission of the term "serveware" in American English, and ambiguity where the term does appear in European English is critical. First, this particular qualifier for determining whether one could select the category of "serveware or tabletop décor for entertaining," the one essential category of selection criteria, is not by the reputable authorities identified above an American English word. Because Dr. Parikh required that all of the survey participants were American residents, she effectively ensured the likelihood that the potential survey participants would not understand the terms used to describe and set the parameters of the selection criteria. ECF Dkt. 204-4 at 13, ¶ 33. Further, the same term is used in the actual survey questions. *Id.* For the reasons stated above, the survey on its face uses words that do not appear in American English and, therefore, are not likely to be understood by the American residents taking the survey, *i.e.* any of the survey participants.

Second, to the extent the term "serveware" does appear in European English, its meaning is overbroad, and there is no evidence in the summary judgment record to indicate that the term means "cake stand." Rather, "serveware," as considered above, appears to mean specifically bowls and other vessels with a cavity from which one can serve or dispense food. Because of the foregoing variations on the term "serveware" and its non-existence in American English sources, the selection criteria is overbroad, inherently unclear. It could include any woman residing in America meeting the other selection criteria who purchased a gravy boat for Thanksgiving, a new set of salt and pepper shakers for their home or as a gift, or really any other woman over the age of twenty-one who purchased a serving bowl for any purpose (*e.g.*, a young woman furnishing a new dorm room as a graduate student or purchasing a salad serving

---

[5] https://wilmax.com/blogs/article/serveware. Accessed March 21, 2023.

THOITS LAW
A PROFESIONAL CORPORATION

bowl for the shared residence of that woman and her spouse/partner; a parent purchasing essentials for her child moving out on their own for the first time; a grandmother purchasing a tureen for a grandchild interested in learning family recipes; or a bar owner purchasing nut bowls for bar snacks). In short, there are innumerable circumstances by which any woman over twenty-one and residing in the United States would qualify to take the survey. Because of this, the selection criteria for the survey fails to even reasonably ensure that the "purchasing public" are or likely to be actual purchasers of Opulent's products, or even of cake stands like the Opulent product identified in the survey. *See Vision Sports, supra*; *Transgo, supra*. Nor is there any way of knowing from Dr. Parikh's report whether ***any*** of these individuals ever was an "actual purchaser" of Opulent products or any of the specific products at issue here. *Id.*

Likewise, the second portion of the same selection criteria category is equally unhelpful. "Tabletop décor for entertaining" could mean: a seasonal Santa's Village type tabletop diorama for Christmas season entertaining; a nutcracker or other seasonal figures associated with Easter or Halloween; festive signage for the Fourth of July, St. Patrick's Day, or birthdays; streamers and confetti; or advertising material in connection with seminars, charity events, or school fundraisers. Here again, there are myriad circumstances under which one would purchase tabletop décor for entertaining, which could take nearly any form and range from nearly any type of good.

The result of the foregoing is that the population sample for Dr. Parikh's survey is so broad that it cannot possibly be deemed to have any reasonable connection to the products or trade dress at issue. Moreover, the overbreadth of the survey population criteria renders the survey unreliable because it fails to reasonably include the "purchasing public" who could assist the jury in resolving the question of whether Plaintiff's products had acquired secondary meaning. *See Vision Sports, supra*; *Transgo, supra*.

OBJECTION TO EXPERT REPORT AND TESTIMONY OF DR. SARA PARIKH

However, this is not the first time that Dr. Parikh's surveys addressing likelihood of confusion have suffered from overbreadth diminishing reliability in circumscribing the sample population, specifically when the relevant population was actual purchasers of the products, just as it is here. *See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 518-19 (6th Cir. 2007) (affirming the district court's finding that Dr. Sara Parikh's study could not serve as dispositive proof of likelihood of confusion where, among other deficiencies, because Dr. Parikh failed to limit the respondent population to actual purchasers of the opponent's products).

As in *Leelanau Wine Cellars*, Dr. Parikh selected an overbroad universe to survey. Here, however, the failure to select an appropriate or reasonable sample population was far more severe such that Dr. Parikh's report and conclusions cannot possibly be deemed reliable at all or sufficient to have any probative value. In *Lelanau Wine Cellars*, the Court criticized Dr. Parikh's selection of the sample population as follows:

> The proper universe in this case is the potential purchasers of Defendants' wine. Dr. Parikh defined the universe as Michigan consumers over 21 years of age who had either purchased a bottle of wine in the $5 to $14 price range in the last three months or who expected to purchase a bottle of wine in that price range in the three months following the interview. While this universe would certainly include purchasers of Defendants' wine, the problem is that the universe, as defined, is significantly overbroad. That is, because Defendants' wines are available primarily only through their tasting rooms on the Leelanau Peninsula and in Frankenmuth and through their website, it is likely that only a tiny percentage of the consumers in the universe chosen by Dr. Parikh would be potential purchasers of Defendants' wines in connection with actual visits to Defendants' tasting rooms.

*Leelanau Wine Cellars*, 452 F. Supp. 2d at 82, *aff'd*, 502 F.3d 504 (6th Cir. 2007).

Here, the overbreadth of Dr. Parikh's sample is even graver. "A survey of the wrong universe is of little probative value." *Nat'l Football League Properties, Inc. v. Wichita Falls Sportswear, Inc.*, 532 F. Supp. 651, 657 (W.D. Wash. 1982). In a survey intended to determine the existence of secondary

OBJECTION TO EXPERT REPORT AND TESTIMONY OF DR. SARA PARIKH

THOITS LAW
A PROFESIONAL CORPORATION

meaning, "The universe is that segment of the population whose characteristics are relevant to the mental associations at issue." *Id.* citing MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:47 (5th ed.). The segment of the population chosen by Dr. Parikh's survey fails to satisfy this criteria.

In this case, the proper universe is the potential purchasers of Opulent's cake stands. *See Leelanau Wine Cellars, supra.* However, where at least in *Leelanau Wine Cellars* the survey participants were known to have purchased a bottle of wine in the same price range as the defendant's wine, there is no evidence in the summary judgment record, including the survey and Dr. Parikh's opinion, that establishes or even intimates that any of the survey participants ever purchased a cake stand or any product type that Opulent sells, whether in the same price range or otherwise. ECF Dkt. 204-4.

As detailed above, the ambiguity of the terms used as selection criteria is so overbroad that they are tantamount to no selection criteria. As a result, Dr. Parikh's selection criteria fails to even target the proper universe. *Nat'l Football League, supra.* Because of this, the survey and Dr. Parikh's opinion based on the same have exceptionally little if any probative value. *Id.* Further, given that the opinion Dr. Parikh derived from her survey is highly prejudicial as it asserts that Opulent's trade dresses do not have secondary meaning, the probative value of the Dr. Parikh's report is substantially outweighed by the prejudice and is likely to confuse the jury at trial. As a result, the report should be ruled inadmissible. FED. R. EVID. 403; *see also, Leelanau Wine Cellars* ("If the flaws in the proposed survey are too great, the court may find that the probative value of the survey is substantially outweighed by the prejudice, waste of time, and confusion it will cause at trial."); *Accord Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 118 (2nd Cir. 1984) (on summary judgment, rejecting plaintiff's survey for utilization of improper universe and a leading question); *Jaret International, Inc. v. Promotion In Motion, Inc.*, 826 F. Supp.

OBJECTION TO EXPERT REPORT AND TESTIMONY OF DR. SARA PARIKH

**THOITS LAW**
A PROFESIONAL CORPORATION

69, 73 (E.D. N.Y. 1993) (on summary judgment, finding survey inadmissible for failure to utilize a proper universe that should have included a fair sampling of defendant's purchasers); *Lisa Frank, Inc. v. Impact International, Inc.*, 799 F.Supp. 980, 984 (D. Ariz. 1992) (holding that survey had "very little probative value" where "the universe ... was not exemplary of the relevant market").

As a result of the foregoing, Dr. Parikh's report, and her conclusions regarding secondary meaning, are categorically unreliable, because her sampling of the population fails to ensure that actual purchasers of Opulent's products, or even the same types of products identified in Opulent's registrations, were a part of her survey sample. This fundamental flaw in Dr. Parikh's survey renders the results of the same unreliable such that the testimony based thereon fails the two-part test applied by controlling law. *See Elosu, supra* ("Rule 702 of the Federal Rules of Evidence tasks a district court judge with ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.")(internal quotations omitted); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (holding that expert testimony must be both relevant and reliable). As a result, Dr. Parikh's report and testimony are inadmissible under FRE 702.

Further, because of the highly prejudicial conclusions drawn by Dr. Parikh and provided as her expert opinion based specifically on the unreliable and fundamentally flawed survey of exceptionally little if any probative value, Dr. Parikh's report is further inadmissible under FRE 403. As a result, Dr. Parikh's report and testimony should not be considered as evidence in ruling on Defendant's Motion, and Plaintiff's objection to the report and testimony of Dr. Parikh should be sustained.

Respectfully submitted,

**THOITS LAW**

THOITS LAW
A PROFESSIONAL CORPORATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: March 21, 2023

By: /s/ *John van Loben Sels*
**John van Loben Sels**
*Attorneys for Plaintiff*,
OPULENT TREASURES, INC.

THOITS LAW
A PROFESIONAL CORPORATION

OBJECTION TO EXPERT REPORT AND TESTIMONY OF DR. SARA PARIKH

# CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2023, I filed this Objection to Expert Report of Dr. Sara Parikh In Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment via the Court's CM/ECF system, which will send notice of the electronic filing to all counsel required to be served.

 Dated: March 21, 2023

By: /s/ *John van Loben Sels*
**John van Loben Sels**