Marc A. Karish (State Bar No. 205440)
marc.karish@kb-ip.com
Bruce G. Chapman (SBN 164258)
bruce.g.chapman@kb-ip.com
KARISH & BJORGUM, PC
119 E. Union Street, Suite B
Pasadena, CA 91103
Telephone: (213) 785-8070
Facsimile: (213) 995-5010

Attorneys for Defendant
and Counterclaim Plaintiff
YA YA CREATIONS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPULENT TREASURES, INC.<br><br>  Plaintiff,<br><br> v.<br><br>YA YA CREATIONS, INC., BALSA CIRCLE, LLC, LEILANI WHOLESALE, CHAIR COVER FACTORY, INC., AND CHICAGO CHAIR COVERS, INC.<br><br>  Defendants.<br><br>YA YA CREATIONS, INC.<br><br>  Counterclaimant,<br><br> v.<br><br>OPULENT TREASURES, INC.<br><br>  Counterdefendant. | Case No. 2:22-cv-02616-SSS-JC<br><br>**DEFENDANT YA YA CREATIONS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br><br>Date: April 21, 2023<br>Time: 2:00 pm<br>Courtroom: 2<br><br>Pretrial Conference: June 20, 2023<br>Trial Date: July 10, 2023 |

# TABLE OF CONTENTS

I.   Introduction ............................................................................................. 1

II.  Plaintiff Has The Burden Of Proof As to All Eight Different Product Shaped Trade Dresses ........................................................................................... 1

III. Plaintiff's Registration Does Not Provide A Presumption Of Secondary Meaning As Of The Date Of Alleged Infringement ................................... 2

IV.  Opulent Treasures Fails To Support Its Claim Of Secondary Meaning With Significant Admissible Evidence ............................................................... 2

    a. Inadmissibility And *De Minimis* Value Of Customer "Declarations" Are Insufficient To Avoid Summary Judgment ................................ 3

    b. Plaintiff's "Circumstantial Evidence" Fails To Raise A Genuine Issue Of Material Fact As To Whether Any Of Its Eight Trade Dresses Have Acquired Secondary Meaning ............................................................ 4

    c. The "Expert" Report of Eddie Zaratsian Fails To Provide Significant Evidence ........................................................................................... 6

V.   Plaintiff Does Not Address Any Of The Factors Likely To Show Secondary Meaning As To Any Specific Product ........................................................ 7

VI.  Defendant Did Not Intend To Capitalize Off of Plaintiff's Goodwill As Shown By The Lack Of Any Confusion ..................................................... 9

VII. Plaintiff Has Not Separately Addressed Any State Claims ....................... 10

VIII. Conclusion .............................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)..................................................................................................2

*Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 870 (8th Cir. 1994) .....................2

*CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1032 (N.D. Cal. 2008)...........................................................................................................2

*Continental Lab. Prods. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992, 1005 (S.D. Cal. 2000) ................................................................................................ 1, 4, 7

*Converse, Inc. v. ITC*, 909 F.3d 1110, 1117-18 (Fed. Cir. 2018).........................2, 5

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir.1998) .................................................................................................................1

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).................................................................................................4, 7

*First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987).....5, 8

*In re C2R Glob. Mfg.*, No. 18-30182-beh, 2021 Bankr. LEXIS 808, at *16 (Bankr. E.D. Wis. Mar. 30, 2021) .......................................................................6

*Leelanau Wine Cellars v. Black & Red*, 502 F.3d 504, 518-19 (6th Cir. 2007) .................................................................................................................8

*Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985).............9

*Sassafras Enters. v. Roshco, Inc.*, 915 F. Supp. 1, 8 (N.D. Ill. 1996) .......................6

*Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989) .................8

*Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 213-16, 54 USPQ2d 1065, 1069-70 (2000) .........................................................................................1

**Other Authorites**

2 McCarthy, McCarthy on Trademarks and Unfair Competition, §§ 11:53, 15:34 .................................................................................................2

Callmann on Unfair Competition, Trademarks and Monopolies § 26:101 (4th ed. 2012 & Supp. 2018) ...............................................................2

Fed. R. Civ. P. 56 ...............................................................................3, 6

Fed. R. Evid. 702 .......................................................................................6

## I. Introduction

Plaintiff Opulent Treasures argues that Defendant Ya Ya Creations has failed to show that Opulent Treasures' trade dresses lack secondary meaning. Opulent Treasures has that backwards, though. The reality is that Plaintiff has the burden to show that each and every one of its <u>eight</u> alleged product shape trade dresses have acquired secondary meaning, including the product shape trade dress in its one registration. As explained in Defendant Ya Ya Creations' opening brief, this is a very difficult task for even a single product shape trade dress and very few product shape trade dresses have ever been held to have secondary meaning.

Plaintiff has not come close to raising any issue of genuine fact regarding secondary meaning as to any of its eight asserted trade dresses. As such, Defendant's Motion for Summary Judgment should be granted in its entirety.

## II. Plaintiff Has The Burden Of Proof As to All Eight Different Product Shaped Trade Dresses

As Plaintiff acknowledges, to establish trade dress infringement, the holder of the trade dress must show (1) that its product design is non-functional, (2) that the design is inherently distinctive or has acquired a secondary meaning, and (3) that there is a likelihood of confusion. *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir.1998); *Continental Lab. Prods. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992, 997 (S.D. Cal. 2000). Product shape trade dress is never inherently distinctive so Plaintiff has to prove acquired distinctiveness (that the product shape has acquired a secondary meaning). *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 213-16, 54 USPQ2d 1065, 1069-70 (2000).

Plaintiff cannot do so for any of the alleged trade dresses.

### III. Plaintiff's Registration Does Not Provide A Presumption Of Secondary Meaning As Of The Date Of Alleged Infringement

The caselaw is clear that if alleged infringement of a trade dress began prior to registration, that the registrant does not get a presumption of secondary meaning and must prove secondary meaning as of when the alleged infringement began. The *Converse* case made this standard clear for the Federal Circuit and based its ruling in part on the *Aromatique* case from the 8th Circuit. See *Converse, Inc. v. ITC*, 909 F.3d 1110, 1117-18 (Fed. Cir. 2018)("This was recognized by the Eighth Circuit in *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 870 (8th Cir. 1994) and has been approved by the relevant treatises. *See* 7 Louis Altman & Malla Pollack, *Callmann on Unfair Competition, Trademarks and Monopolies* § 26:101 (4th ed. 2012 & Supp. 2018); 2 McCarthy, *supra*, §§ 11:53, 15:34"). The *Aromatique* case has been cited by at least one other court in the 9th Circuit for this premise. See, *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1032 (N.D. Cal. 2008)("In the present case, the defendant presents undisputed evidence that it has been using the mark since 1997, five years before plaintiff registered the mark with the USPTO. As in *Minnesota Specialty Crops,* since the defendant was using the mark prior to its registration, plaintiff is not entitled to a presumption that the mark is valid.")

Accordingly, Plaintiff is not entitled to a presumption of secondary meaning as to its one registered mark and has the burden of proving validity of that trade dress in addition to the other seven.

### IV. Opulent Treasures Fails To Support Its Claim Of Secondary Meaning With Significant Admissible Evidence

Because Opulent Treasures bears the burden of proof on secondary meaning, it must come forward with significant probative evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)

(holding that the party opposing summary judgment must come forward with significant probative evidence as to each element of the claim on which it bears the burden of proof). It has failed to identify such evidence. The so-called customer declarations are neither admissible nor significant; the facts cited in Ms. Wilson's declaration are not significant under the case law; and the unsworn expert report, if Mr. Zaratsian showed up a trial to testify, would not be significant because he made it clear in his deposition that he would only testify as to his personal opinion based solely on his observation. Regardless of whether or not Defendant's survey evidence showing no secondary meaning in the OT1172 product shape trade dress is admissible, Opulent Treasures has failed to created a genuine issue requiring trial.

### a. Inadmissibility And *De Minimis* Value Of Customer "Declarations" Are Insufficient To Avoid Summary Judgment

Opulent Treasures attached sixty two boilerplate "declarations" to an unsworn expert report attached to the declaration of Carol Wilson. Forty two of these "declarations" are unsworn and so clearly do not meet the requirements of Fed. R. Civ. P. 56(c)(4). The remaining twenty "declarations" were all signed by the same people – five from each of Bryan Nakamori, Geoffrey Jowett, Jeffrey Xander and Lauri Taylor. (D.N. 219-4 at pp. 214-256.) Moreover, at least Bryan Nakamori and Jeffrey Xander have business relationships with Plaintiff. (Supplemental Karish Declaration ("Supp. Karish Dec."), Exh. J at 16:17-24 (Nakamori), 178:8-15 (Xander).) There is no suggestion that Opulent Treasures could "produce admissible evidence to support the fact[s]" in these "declarations", as required by Fed. R. Civ. P. 56 (c)(1)(B). But even in admissible form, the facts in these "declarations" are not significant evidence.

Boilerplate declarations, like these, are entitled to *de minimus* evidentiary weight and are not sufficient to raise an issue of material fact. *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1152 (9th Cir. 1999)("Evidence of secondary meaning from a partial source possesses very limited probative value"); *Continental Lab. Prods. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992, 1005 (S.D. Cal. 2000)("The Ninth Circuit has held that affidavits of employees and close affiliates of a trademark holder carry *de minimus* evidentiary weight in determining whether a trademark has acquired secondary meaning, and cannot defeat a defendant's motion for summary judgment"). Plaintiff's claim that these boilerplate statements are somehow akin to an expert consumer "survey" cannot be made with a straight face.

Thus, the "declarations" do not raise a disputed issue of material fact that Plaintiff's alleged product shape trade dresses have acquired secondary meaning.

### b. Plaintiff's "Circumstantial Evidence" Fails To Raise A Genuine Issue Of Material Fact As To Whether Any Of Its Eight Trade Dresses Have Acquired Secondary Meaning

Rather than illustrate secondary meaning or at least a disputed issue of material fact as to any of the eight specific alleged trade dresses, all Plaintiff can do is cite to vague statements in Wilson's declaration to try to muddy the water.[1]

Plaintiff has not come forward with any evidence of any advertising

---

[1] At least some of those statements appear, based on the documentary evidence, to be false. For example, Wilson's declaration and Plaintiff's opposition state that "Opulent has sold the products at issue since 1995." This statement directly contradicts Plaintiff's interrogatory response submitted under penalty of perjury that the earliest products at issue were sold in 2006 and that some of the products were not sold until much later. (Dkt. No. 204-5 at p. 6.) But true or false, they do not constitute significant evidence capable of opposing summary judgment.

whatsoever prior to 2014. For the period after 2014, Plaintiff has not come forward with any evidence capable of showing how much advertising was spent on any particular trade dress. All Wilson can do is make huge, generalized statements about sales and advertising that are wholly unsupported and not specific to any of the eight product shape trade dresses asserted in the case. (Dkt. No. 219-3 at ¶¶4-5.) Moreover, several statements about "hits" and "views" are for years after Defendant began selling allegedly infringing products and are therefore irrelevant to whether Plaintiff's alleged trade dresses had secondary meaning prior to when Defendant began selling the accused products. See *Converse, Inc. v. ITC*, 909 F.3d 1110, 1117-18 (Fed. Cir. 2018)(plaintiff must prove secondary meaning as of when the alleged infringement began).

      Additionally, Wilson makes generalized statements about "unpaid media attention" but wholly fails to show when that alleged "attention" occurred, what products received that attention, or how that alleged attention created secondary meaning. (Dkt. No. 219-3 at ¶6.) Indeed, Wilson's citations to alleged ads "attached as Exhibit I to the Zarasian Report" fails to specify anything about the ads, such as where and when they ran, which products were in them, and how the ads created secondary meaning. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987) ("even evidence of extensive advertising or other promotional efforts would not necessarily indicate that prospective buyers would associate the trade dress with a particular source.") Thus, Wilson's declaration and the alleged sales and advertising she claims is simply not probative of anything.

      It is Plaintiff's burden to demonstrate that they promoted *each* of the eight *separate* trade dresses sufficiently to create a link in the mind of the public between each of those eight separate trade dresses and the Plaintiff. Plaintiff simply cannot do this.

### c. The "Expert" Report of Eddie Zaratsian Fails To Provide Significant Evidence

There is no dispute between experts that would make summary judgment inappropriate. Contrary to Plaintiff's claim on page 14 of its opposition, Opulent did not commission "several experts to examine evidence and develop scientific data in order to determine whether Opulent's configurations had obtained secondary meaning." The only alleged "expert" who opines on secondary meaning is Eddie Zaratsian. Plaintiff's expert Rhonda Harper conducted a survey with regard to likelihood of confusion and not secondary meaning. (Supp. Karish Dec., Exh. K (Harper Deposition Transcript) at 17:10-18:2.)

As an initial matter, the report of Eddie Zaratsian is not signed under penalty of perjury and does not meet the requirements of Fed. R. Civ. P. 56(c)(4). Moreover, he could not provide admissible testimony at trial capable of establishing secondary meaning, as required by Fed. R. Civ. P. 56 (c)(1)(B). Mr. Zaratsian made it clear in his deposition that his opinion on secondary meaning was based only on his personal observation, his experience and his creative eye. (Suppl. Karish Dec., Exh. L (Zaratsian Deposition Transcript) at 36:25-37:19.) Such evidence is not sufficient. *Sassafras Enters. v. Roshco, Inc.*, 915 F. Supp. 1, 8 (N.D. Ill. 1996)("Michalek's business experience might perhaps qualify him as an "expert" under Fed. R. Evid. 702 on some matters having to do with pizza stones . . . but there is surely nothing to suggest his qualifications as a mindreader. Simply put, he has not been shown to be capable of testifying as to the mental reactions that *other* persons would have on seeing Roshco's product."); *In re C2R Glob. Mfg.*, No. 18-30182-beh, 2021 Bankr. LEXIS 808, at *16 (Bankr. E.D. Wis. Mar. 30, 2021)("the Court is not satisfied that Sundby is qualified to offer opinions on consumer perceptions—opinions typically offered by experts with training and experience in conducting and interpreting consumer surveys.") The personal injury and patent cases cited by Plaintiff do not involve secondary meaning, let alone

whether disputing expert assessments regarding secondary meaning affect the decision of whether to grant summary judgment.

### V. Plaintiff Does Not Address Any Of The Factors Likely To Show Secondary Meaning As To Any Specific Product

Plaintiff cites to *Filipino Yellow Pages* which provides a non-exhaustive list of factors courts consider in assessing secondary meaning. "Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999)(Declaration of Plaintiff's founder and president insufficient to avoid summary judgment).

However, Plaintiff fails to address any of these factors with regard to any of the eight specific trade dresses. Plaintiff simply falls back on the generalized and unsupported statements of its founder and president Carol Wilson to claim that everything has acquired distinctiveness. This is not enough.

As explained above, Plaintiff's boilerplate declarations do not constitute significant admissible direct consumer testimony that any of the alleged trade dresses have any secondary meaning. Additionally, Plaintiff has no survey evidence showing secondary meaning for any of the alleged trade dresses.[2]

---

[2] In its response to Defendant's Statement of Uncontroverted Facts, Plaintiff argued that the likelihood of confusion survey by its expert Rhonda Harper was survey evidence of secondary meaning. However, Rhonda Harper testified that she did not conduct a survey regarding secondary meaning. (Supp. Karish. Dec., Exh. K (Harper Deposition Transcript) at 17:10-18:2.)

Plaintiff did not even serve a rebuttal report to Defendants survey expert showing no secondary meaning regarding Plaintiff's product number OT1172.³

Despite having ample opportunity to provide it, Plaintiff has no evidence of any advertising expenses prior to 2014 and no evidence of advertising expenses as to any of the eight specific trade dresses after 2014. Moreover, Plaintiff has failed to show that any of its alleged advertising of any specific product is likely to lead to secondary meaning. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987)("advertising campaign has not stressed the color and shape of the antifreeze jug so as to support an inference of secondary meaning . . . Carbide did not attempt to engender consumer identification with the yellow, F-style jug. It did not, for example, urge consumers to look for the "familiar yellow jug." The district court's finding that Carbide's extensive advertising budget failed to establish a secondary meaning is not clearly erroneous.") Plaintiff also provided no evidence that, prior to any alleged infringement by Defendant, it marked any of the products at issue, or their packaging, labels or webpages, with any indication that the shape of the product was alleged to be a trademark.

Defendant produced evidence that Plaintiff's use of its alleged trade dresses was not exclusive; Plaintiff has not come forward with evidence that its use of any

---

³ Plaintiff's criticism of Defendant's expert Sarah Parikh's survey results should be rejected. Plaintiff misconstrues the caselaw to require a survey of actual purchasers of the parties' products when survey groups of target consumers are commonly accepted. *See e.g., Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989).
   Plaintiff's only cited case critical of a survey by Dr. Parikh is from 2007 and easily distinguishable, because of the uniquely limited set of people likely to encounter those parties' products for likelihood of confusion (not secondary meaning). *Leelanau Wine Cellars v. Black & Red*, 502 F.3d 504, 518-19 (6th Cir. 2007). The case did not criticize the survey for failing to limit the respondent population to "actual purchasers of opponent's products", but that it "failed to include individuals who were <u>potential</u> purchasers." *Id.* (emphasis added).

of its alleged trade dress product shapes was substantially exclusive, because it cannot. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985)("Evidence of third party usage did exist and is relevant to disprove the existence of secondary meaning.") Additionally, beyond the self serving declaration of Carol Wilson, Plaintiff has not come forward with any evidence that any of the eight alleged trade dresses has an established place in the market.

For the Court's convenience, attached as Exhibit M to the Supplemental Declaration of Marc Karish is a chart that summarizes the sales and declaration evidence for each of Plaintiff's products at issue.

Plaintiff has come forward with no significant evidence that any individual one of these alleged trade dresses could have aquired secondary meaning, which is Plaintiffs' burden. For example, the undisputed evidence is that Plaintiff's OT1703 products were sold for only 2 years, have not been sold since 2016, and had less than $40,000 in sales. Plaintiff does not bother to argue how the evidence conceivably establishes secondary meaning on an individual trade dress-by-trade dress basis, because it cannot.

## VI. Defendant Did Not Intend To Capitalize Off of Plaintiff's Goodwill As Shown By The Lack Of Any Confusion

Plaintiff's argument that Defendant supposedly copied Plaintiff's product shapes to trade on the established secondary meaning of Opulent's products is unsupported by any evidence. Plaintiff does not dispute that it is unaware of a single instance of actual confusion despite years of use and substantial sales by Defendant. It simply makes no sense that someone would copy eight different product shape trade dresses to trade on Plaintiff's alleged secondary meaning and not have a single incident of actual confusion.

### VII. Plaintiff Has Not Separately Addressed Any State Claims

Plaintiff has not addressed any of Defendant's arguments regarding its state claims and apparently concedes that those claims fall with the Federal claims.

### VIII. Conclusion

For each and all of the reasons above, Ya Ya Creations requests that the Court grant Ya Ya Creations' motion for summary judgment against all of Opulent Treasures' claims in this litigation.

Respectfully submitted:

Dated: March 28, 2023          KARISH & BJORGUM, PC

By: /s/ *Marc A. Karish*
Marc A. Karish

Attorneys for Defendant
and Counterclaim Plaintiff
YA YA CREATIONS, INC.

**CERTIFICATE OF SERVICE**

A copy of Defendant Ya Ya Creations, Inc.'s Reply in Support of Motion For Summary Judgment was served upon the parties to this matter via the Court's CM/ECF system and via email on March 28, 2023.

*/s/ Marc A. Karish*